19 P.(2d) 192

**STATE v. WHITE et al.**

No. 3740.

Supreme Court of New Mexico.

Feb. 23, 1933.

James M. H. Cullender, of Roswell, and O. O. Askren, of Roswell, for appellants.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

ZINN, Justice.

On the 17th day of April, 1931, Oscar White and James Audray White were indicted by a grand jury in Chaves county, charged with the crime of larceny of a cow of the property of one R. W. Hancock, and were found guilty of such charge by a jury on the 30th day of April, 1931, and were sentenced by the trial court after such conviction. On this appeal it is urged by the appellants that the trial court erred in refusing to instruct the jury to return a verdict of not guilty at the conclusion of the state's case in chief, and also at the conclusion of all the evidence, for the reason that there was not sufficient substantial evidence to support a verdict of guilty.

■ At the conclusion of the state's case in chief, the defendants moved for a directed verdict, which motion was duly overruled, and the defendants introduced evidence in their behalf. By the introduction of such evidence after overruling said motion, the appellants waived the objection. State v. Analla et al., 34 N. M. 22, 276 P. 291; State v. Stewart, 34 N. M. 65, 277 P. 22.

It now becomes necessary to consider the evidence as it applies to each of the defendants, and to apply the law.

As to defendant Oscar White, the evidence discloses that he owned a ranch twelve miles north of Roswell known as the Ballard ranch, on the west side of the Pecos river, and he owned another ranch twenty-five miles from this ranch, known as the River ranch, on the east side of the Pecos river. That the Ballard ranch was the headquarters ranch, but the River ranch was merely a camp which had been unoccupied for many years, and which ranch adjoined that of R. W. Hancock, the owner of the cow. That on December 13, 1930, Hancock's son let six head into a small pasture on the River ranch, returning the next day with his father, R. W. Hancock, and his brother, and found one of these six head, a cow, butchered and hanging in an open shed at the River ranch camp with the hide rolled up and lying on the ground in the shed where the meat was hanging up, which hide Hancock later took to Roswell and delivered the same to the officers. The evidence further discloses that Oscar White was seen with James Audray White about four miles from the river ranch, some time during the afternoon, but that they parted about 200 yards from where they were seen by the state's witnesses, James Audray White, proceeding to the river ranch camp, while Oscar White crossed the Pecos river and went to a place known as Pony Lake where he was feeding cattle and ranging a band of sheep, which place is about nine miles from the River ranch, and then rode on to Ballard ranch, arriving there about seven o'clock that evening and stayed there all night, returning to Pony Lake the next day; that during the afternoon of that day, Sunday, James Audray White, accompanied by Mrs. Audray White and one Lucille Barker, came to Pony Lake when James Audray White informed Oscar White that a beef had been killed at the River ranch belonging to Hancock, and that things were out of shape, and that Audray thought Oscar out to know about it; that Audray and the

,women then left, going to Mrs. Audray White's ranch, and that Oscar then went to the River ranch and there found the beef hanging up in the shed and a hide bearing his own brand lying near the beef, and then after remaining there a short period of time returned to the Ballard ranch; there was no evidence that Oscar White had been at the River ranch at any time either during that day, being Sunday, or the preceding day. The evidence further shows that when the Hancocks went to the River ranch and found the beef in the shed, the hide found at that time bore the Hancock brand, which hide was taken by the Hancocks, and that R. W. Hancock returned that evening with the sheriff and found the meat still hanging there, cold, and the hide, which Oscar White saw bearing his brand, lying there in the shed, but warm and bloody, with only three feet on it. The next morning Hancock returned to the River ranch together with the officers and followed some tracks leading away from the place for about a mile and a half where they found a beef carcass which had been freshly skinned, without a hide, but which carcass had one foot on it, apparently being the carcass belonging to the hide bearing the Oscar White brand substituted for the hide bearing the Hancock brand in the shed with the beef.

As to James Audray White, the evidence further discloses that he left his ranch on December 13, 1930, Saturday, for the purpose of gathering some strayed cattle, and that he met with Oscar White as above stated, and, after parting, proceeded to the River ranch arriving alone a short time before night,

where he met one Frank Johnson, who soon left, and that James Audray White stayed at the camp all night, and that about two o'clock Sunday morning his wife and Lucille Barker came to the house and stayed there all night and all of that part of the next day, Sunday, until late in the afternoon when they left to return to their own ranch, during which time James Audray White went to Pony Lake and informed Oscar White about the killing of a beef as above set forth. The evidence further shows that on Sunday morning James Audray White went to the shed and cut off a piece of the beef hanging there, and cooked it for breakfast, and that the butchered beef hanging in the shed had been cut up "cowboy style" with a cleaver or axe, not sawed, and that an axe was found close to the shed with finger prints thereon which were the finger prints of James Audray White, and that James Audray White admitted handling the axe with bloody hands.

On the above evidence the jury brought in a verdict of guilty as to the two defendants, Oscar White and James Audray White.

At the conclusion of all the evidence the defendants moved for an instructed verdict in their behalf, which motion was denied.

■■ The court erred in denying the motion of Oscar White for an instructed verdict in his behalf at the close of the case. The evidence introduced by the defense, which adds nothing very substantial to the state's case as to Oscar White, is insufficient to support a verdict of guilty as to him. True he owned the River ranch where the beef was

found, and was seen three or four miles from that place on the afternoon before the crime was committed, but that with the other facts above set forth is insufficient to support a verdict of guilty. The River ranch was unoccupied, open to every one, and the possession or ownership of the ranch by Oscar White and the shed wherein the stolen beef was found does not raise a presumption of his guilt. There was no evidence that the shed was locked or closed in such manner that no one except Oscar White could enter it; but on the contrary the very facts disclosed by the evidence show conclusively that it was used by others.

The state contends that while recent unexplained possession of stolen property standing alone does not justify conviction of larceny, but that such possession with slight corroboration of other inculpatory evidence to show guilt is sufficient.

There is no evidence that Oscar White had anything but constructive possession of the beef. Possession of the fruits of crime to raise a presumption of the guilt of the possessor involves knowledge, dominion, and control, with power of disposal, or voice in the power of disposal, in the alleged possessor. The fact that the beef was found in a shed on a large ranch belonging to the defendant, which shed and ranch was open to the use of others, does not raise such a presumption of law as to the defendant's guilt, which would justify the conviction of the accused.

"It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property, when such possession could also, with equal right, be attributed to another. Hence the mere fact of finding stolen property on premises, or any other place, to which many others have free access, without showing his actual, conscious possession thereof, discloses only prima facie constructive possession, and is not such possession as will justify an inference of guilt by reason thereof. The unexplained possession by one of goods belonging to another does not raise the presumption that a larceny has been committed, and that the possessor is a thief; additional evidence is necessary to establish the corpus delicti. Sanders v. State, 167 Ala. 85, 28 L. R. A. (N. S.) 536, 52 So. 417; notes in 101 Am. St. Rep. 481, 487, and 68 L. R. A. 48.

"In State v. Seymour, 7 Idaho, 257, 61 P. 1033, this court refused to allow a conviction for grand larceny to stand, although the defendant admitted the possession of the stolen property, and attempted to explain the same, and had fled from the place of the commission of the crime after his arrest. The court said: 'In case of a substantial conflict in the evidence, the verdict of a jury will not be disturbed. But this is not a case where the evidence is conflicting. There is an absolute lack or want of legal evidence to sustain the verdict. In such a case the jury cannot arbitrarily ignore the evidence, when there is no conflict, and the witnesses are not impeached. If the jury could do that, it could find a defendant guilty without any evidence, and thus violate the well-established rule that a defendant cannot be legally convicted except upon

legal evidence that establishes his guilt beyond a reasonable doubt.' " State of Idaho v. Frank Sullivan et al., 34 Idaho, 68, 199 P. 647, 17 A. L. R. 902, at pages 907 and 908.

The fact that the beef was found in a shed on a large ranch belonging to one accused of larceny, which shed and ranch has been unoccupied for a great period of time and open to the use of others beside the accused is a circumstance which requires the corroboration of other testimony pointing directly to the guilt of the accused beyond a reasonable doubt, and standing alone such ownership discloses only prima facie constructive possession, and is not such possession as will justify an inference of guilt by reason thereof.

There are no other facts or circumstances save ownership of the ranch and shed in Oscar White, and the fact that he was seen on his own ranch about three or four miles from the shed, where he had a right to be, which might point to the guilt of the defendant Oscar White. He was not at the River ranch camp at any time when the Hancock cow could have been butchered.

The conviction of the defendant Oscar White cannot be upheld in this court, unless there is substantial, sufficient evidence in the record which, if true, warranted a verdict of guilty. The evidence in this case as to Oscar White is insufficient to sustain the verdict, and the court should have directed the jury to return a verdict of not guilty as requested at the close of the case, with directions that he be discharged.

For the reasons stated, the judgment of the trial court as to Oscar White will be reversed.

■ As to defendant James Audray White, the jury may have reasonably inferred as to his guilt. He was actually present at the ranch the day of the crime, and was there all night, and the next morning he went to the shed and cut off a piece of the beef hanging there and cooked it for breakfast, and the hide was there at that time. The beef had been cut with an axe, and an axe was found near the shed with fresh blood stains bearing his identified finger prints; that he told Oscar White that one Frank Johnson had killed a beef, and things were out of shape or things are going wrong. There was no explanation as to what things were going wrong, and it is apparent that he was in fear. Though the evidence for the defense intended to show that the crime may have been committed by one Frank Johnson, the jury did not so believe, and from the facts and the evidence tending to show that James Audray White may have committed the crime, the jury could have reasonably found James Audray White guilty as charged.

As to error in the admission of the testimony of witness Lucille Barker raised by the defendant Oscar White, it will not, therefore, be necessary for us to consider them in this case.

Finding no error, the judgment as to James Audray White will be affirmed. It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.