56 P.(2d) 1029

**STATE v. LOTT et al.**

No. 4101.

Supreme Court of New Mexico.

April 20, 1936.

Keith W. Edwards, of Fort Sumner, and E. R. Wright, of Santa Fé, for appellants.

Frank H. Patton, Atty. Gen., and Edw. P. Chase, Asst. Atty. Gen., for the State.

BRICE, Justice.

The original opinion is withdrawn and this substituted.

The appellants were convicted of the theft of one neat cattle and sentenced to be imprisoned for a term in the state penitentiary. The grounds advanced for re-

versal are that neither venue nor appellants' connection with the theft was proved.

The evidence and inferences tending to prove venue and theft, are as follows: L. O. Morgan was the owner of approximately 100 head of cattle, among which was a red-polled heifer about 16 months old, branded 1BIF on the left shoulder and side. He moved 14 head of these cattle, including this heifer, to the range of Adrian Turner, which included land in Lincoln and De Baca counties. The cattle were turned loose at a watering in Lincoln county about two miles from the De Baca county line, where it was expected they would range, though the range had a watering in De Baca county, and nothing prevented the cattle from ranging in both counties. After the 4th of July, Morgan rounded up what cattle he could find in Lincoln county, around that watering, and took them back to his ranch. The red-polled heifer and some others were not among these cattle. On the 7th day of July, the appellant Park had the carcass of a young beef at his house in Lincoln county, a quarter of which was turned over to a brother of the appellant Lott. A witness testified that the two appellants, together, on the 8th day of July, 1934, were seen by him to take something from an autotruck to a well in De Baca county, which he thought they dropped into the well. This suspicious action on the part of appellants brought about a search, and the discovery in the well of the hide, hoofs, and ears of the red-polled heifer, identified by Morgan's brand on the hide. The entrails of a neat cattle were found near the road where the truck stopped. The appellants admitted passing along the road near the well with a truck, hauling in it two horses (by which the truck was identified), but denied any connection with the hide or entrails, or that the truck was stopped at or near the well, or that they went to the well. After being informed of this discovery, Morgan, on or about the 15th of July, gathered up the remainder of the cattle from the De Baca county watering, and brought them to his ranch; the red-polled heifer only was missing. The distance from Park's house to the places where the cattle ranged is not brought out plainly. Appellant Park stated he lived about 9 miles from the De Baca county line. Interrogated as to the distance in another direction to the De Baca county line, he claimed to be ignorant of it. The heifer was stolen some time between the two roundups.

(1) The jury was authorized to infer from the fact that as the heifer was not with the cattle gathered at the Lincoln county watering at the first roundup, it was at that time located at the De Baca county watering with the cattle that ranged there, and therefore must have been stolen from De Baca county, as it was stolen between the two roundups, and was the only animal missing. Venue was proved by substantial evidence.

(2) There is substantial evidence to prove that appellants, together, on the 8th day of July, 1934, took the hide, hoofs, and ears of the missing heifer and deposited them in an abandoned well in De Baca

county, N. M., and dropped the entrails near the well. Appellants state in their brief on motion for rehearing: "Both of the defendants testified upon the witness stand, and both denied emphatically that they·were in possession of the hide, hoofs and/or entrails of the animal in De Baca County, and particularly at the place testified to by the State's witness Gutierrez."

However, the jury apparently just as emphatically disbelieved appellants' story and believed the state's witness. It seems there were three witnesses to the depositing of the hide, etc., in the well, and only one was called by the state. This was not called to the attention of the trial court nor mentioned here at the original hearing. Of this failure to produce the witnesses, appellants state: "It appears from the evidence that the other two witnesses who were present at that time were never even called by the State as witnesses, although their names appear endorsed upon the information, and it further appears that they were residing at Borica, within twenty miles from Fort Sumner, at the time of the trial."

As appellants state, the names of the two witnesses mentioned were indorsed on the information; appellants were represented by able counsel, and would no doubt have had these witnesses in court if their testimony would have favored them.

Again appellants state in their brief: "In the case at bar we have the Court, in its opinion, distinctly recognizing the fact that the jury, in order to arrive at a verdict of guilty under the evidence, had to guess from the evidence, and that there was in fact no clear evidence to establish either the venue or to connect the defendants with the offense."

It is seldom testimony more clear and convincing is found. The state's witness testified, in·substance, that he and two other men were at a sheep camp some distance from the road; that two men, driving a truck with two horses in it, stopped, took something from the truck, carried it to, and appeared to have dropped it in, the well. The appellants admit they passed along the road in a truck with two horses in it, about the time claimed by the state witness, but deny that they went to the well at all, or even stopped the truck. One or the other testified falsely, and the jury believed the state's witness. This being the case, it was not a "guess," but positive affirmative testimony, and when coupled with the finding of the damaging evidence in the well, brought about by appellants' suspicious actions, the proof is positive (not guesswork) that the appellants had in their possession the hide, ears, and hoofs of a heifer that had been stolen within two or three days of that time, and that they were concealing them for some purpose. The natural inference is that the purpose was to destroy the evidence of the identity of a recently stolen animal. Now only the thief would be interested in destroying or concealing the telltale hide with the owner's brand, and the ears with his mark thereon. In addition to this the appellant Park had the carcass of a young neat cattle

in his possession the day before, and no attempt was made by appellants at the trial to account for its hide and ears. It would be easy for a jury, knowing the ways of cow thieves, to make the correct "guess" (if appellants' counsel so considers it), with such testimony before them. . Appellants further state, after quoting from our former opinion: "We have quoted this language a second time in this memorandum for the purpose of showing as we contend, that the Court itself, in its opinion, clearly recognized that the verdict of the jury was, of necessity, under the testimony in this case, based on speculative inference rather than upon direct evidence or circumstantial evidence."

On the contrary, the court is decidedly of the opinion that, in view of the fact that the jury believed the evidence of the state's witnesses, which was amply sufficient to prove that appellants deposited the hide, hoofs, and ears of the stolen heifer in the well; that appellants falsely denied any connection with the hide, etc., and therefore gave no explanation of such possession; that one of the appellants had the carcass mentioned in his possession, and no hide nor ears was offered in evidence or mentioned by appellants that could have been removed from the animal at appellant Park's house, though such hides and ears are required by law to be kept 30 days after the butchering of such animal (Section 19-106, N.M.Comp.St.Ann.1929); the jury was justified in returning a verdict of guilty.

The Supreme Court of the Territory, in the case of Territory v. Livingston, 13 N. M. 318, 328, 84 P. 1021, 1024, stated, with reference to the possession of recently stolen property: "We do not wish to be understood as holding that any presumption of law as to defendant's guilt arises from the unexplained possession of recently stolen property, on the contrary, we believe the true rule to be that such fact, when established, is a circumstance to be considered by the jury the same as any other fact or circumstance, and by them given such weight as they may deem it entitled to."

The rule is well stated in R.C.L. as follows: "The rule is without doubt, that the possession of the property by the defendant soon after the commission of the alleged crime is merely an evidentiary fact tending to establish guilt which should be submitted to the jury, to be considered in connection with all the other facts and circumstances disclosed by the evidence. It does not in any case raise a presumption of law that the defendant committed the alleged larceny; although the unexplained exclusive possession of stolen goods shortly after the commission of a larceny may and often will be sufficient evidence to justify a jury in finding the possessor guilty. But the trial court should not instruct the jury that it does raise such an inference, as the determination of the inferences to be drawn from the evidence is strictly a matter for the jury. * * * But the unexplained possession by one person of goods belonging to another does not raise the presumption that a larceny has been com-

mitted and that the possessor is a thief. Additional evidence is necessary to establish a corpus delicti. Unless the jury are satisfied beyond a reasonable doubt that the offense has been committed, the unexplained recent possession of goods will not justify the conclusion that the person in whose possession they are found is the thief." 17 R.C.L., title, Larceny, § 76, pp. 71, 72.

The Texas Court of Criminal Appeals held: "The possession of recently stolen property has many times been held a sufficient circumstance to justify the conclusion that said property was stolen, and that its possessor was the thief." Hanna v. State, 122 Tex.Cr.R. 122, 54 S.W.(2d) 91.

The case of May v. State, 135 Ark. 400, 205 S.W. 807, 808, is very much like this one. The appellant was seen to take the head of a recently stolen cow from where it was butchered and hide it. The court said: "Appellant's possession of the head of the recently stolen animal, if not satisfactorily explained, was sufficient to warrant the jury in concluding that he was guilty of stealing the animal, and it was properly left to the jury to determine whether or not appellant's explanation of the possession of the stolen property was satisfactory and reasonable and consistent with his innocence. Appellant himself produced the testimony tending to show that the animal was butchered by Schuflin alone, but the jury were not bound to accept his version of the matter and may have concluded from the fact of his possession of the head, and his suspicious conduct in re-moving it and secreting it, that the belief was warranted that he had stolen the animal himself."

In regard to having only a part of stolen property in possession when charged with the theft of other property stolen at the same time, the Texas Court of Criminal Appeals in Berry v. State, 87 Tex.Cr.R. 559, 223 S.W. 212, 213, stated: "We cannot agree to this contention. It has often been held by this court that from the recent possession of a part of alleged stolen property, theft of the whole may be inferred and a conviction sustained. Hill v. State, 41 Tex. 253, 256; White v. State, 17 Tex. App. 188; Gonzales v. State, 18 Tex.App. 449, 453; Rose v. State, 52 Tex.Cr.R. 154, 155, 106 S.W. 143. In the case last cited, it was shown that a pocketbook was stolen, containing money and a drink check. The latter article alone was traced to the possession of appellant soon after the alleged theft. He was convicted, and the case affirmed by this court."

The case of State v. Kinsey, 77 Utah, 348, 295 P. 247, 249, we believe correctly states the law, as follows: "Possession of articles recently stolen, when coupled with circumstances of hiding or concealing them, or of disposing or attempting to dispose of them, or of making false or unreasonable or unsatisfactory explanations of the possession, may be sufficient to connect the possessor with the commission of the offense. But mere or bare possession when not coupled with other culpa-

tory or incriminating circumstances, does not alone suffice to justify a conviction."

The possession and concealment of the hide, ears, etc., of a stolen animal, the object of which could only be to hide the evidence of theft, is much more damaging as proof of theft than the mere unexplained possession of the animal; only the thief ordinarily is sufficiently interested. We think the possession of the hide, ears, and hoofs of the stolen animal, their concealment, coupled with the other circumstances mentioned herein, amply justified the verdict.

The motion for rehearing is denied.

The judgment of the district court should be and is affirmed, and the cause remanded.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.