403 P.2d 545

**The STATE of Arizona, Appellee,**

**v.**

**Arthur Brito CHAVEZ, Appellant.**

**No. 1510.**

Supreme Court of Arizona,

In Division.

June 24, 1965.

Robert W. Pickrell, former Atty. Gen., Norman E. Green, Pima County Atty., Carl Waag, William T. Healy, Deputy Pima County Attys., for appellee.

Jack I. Podret, Tucson, for appellant.

McFARLAND, Justice:

Arthur Brito Chavez, hereinafter referred to as defendant, was tried, convicted and sentenced to serve not less than six years and not more than eight years for unlawful sale of narcotics. From the conviction and sentence he appeals.

On October 7, 1963, at about 8:00 p. m., state narcotics agent Edmund Cleveland, of the Department of Liquor Licenses and Control, Leonard B. Hymer, also an agent of the department, and William Dunn, of the Tucson Police Department, were present and assisted in a search of an informer for the department, Henry Lugo. Lugo was stripped of his clothing, and both clothing and body searched for evidence of narcotics. There was also present in the room at the time of the search Cleveland's son, Ben. Then Cleveland gave Lugo a five-dollar bill for the purchase of narcotics. Cleveland, Hymer, and Dunn then went out to the parking lot, where the agents searched Lugo's car for evidence of narcotics after which Lugo proceeded in his car to the establishment known as the Globe Pool Hall. He was followed by Cleveland, Hymer and Dunn. Stopping at the pool hall, Lugo got out of his car, and waited in front thereof for several minutes until defendant came on the scene. Defendant and Lugo went into the pool hall. There were numerous persons congregated therein. From across the street Dunn saw Lugo and defendant leave the hall by the back door, and lost sight of them, but two or three minutes later saw them emerge from the hall. Hymer, who was in a different location, testified that he could see

**238**

Lugo and defendant in the back of the pool hall through his binoculars, and described motions of their hands as though they were shaking hands and talking. Lugo, followed by the agents, drove to the state office building where he handed Cleveland the piece of paper introduced in evidence containing heroin.

The evidence showed that Lugo had been convicted of a felony, was placed on probation, and was a user of narcotics. Lugo testified that he was paid a bonus for every case he made, and Cleveland admitted that he would not have kept him on so long "if he hadn't made cases—probably not over a month or five weeks," but that he would have paid him just the same during that period.

During the trial Lugo got sick, and admitted that his type of illness often happened to "hypes." He also admitted taking narcotics a few days before the trial. Several witnesses testified in behalf of defendant to the effect that Lugo had a bad reputation for truth and veracity; that he was a heavy user of narcotics, and to other matters affecting his credibility.

 Defendant first claims that prejudicial error was committed during the cross-examination of Cleveland, as follows:

"Q Mr. Cleveland, I believe you told us a short time ago that the going price for a paper of Heroin in this area was five dollars. Is it from your experience and narcotics investigations that people that are pushers of narcotics, and I am speaking just of pushers, usually deal and make a lot of money out of this sort of traffic?

"A Well, there are not—there is lots of money made from pushing, yes.

"Q If a man was a pusher, do you expect he would be able to afford an attorney?

"A Well, there is all different kinds of pushers.

"Q Generally a man that is selling narcotics and making a lot of money, do you think that he would be able to afford an attorney?

"A Most of them have, yes.

"Q Would you think that if he did happen to get picked up and incarcerated, that he would be able to make bond and pay a bondsman?

"MR. HEALY: I have to object to this line of questioning. This calls for a conclusion on the part of Mr. Cleveland that isn't specific to any one person or any one individual. If he is referring to Mr. Chavez, I wouldn't have any objection.

"THE COURT: You say you have no objection if he makes his question applicable to this defendant?

"MR. HEALY: No.

"THE COURT: All right. Mr. Podret, reframe your question.

"Q I was going to go into it generally and then refer to this defendant.

"Would you expect that if Mr. Chavez here was a seller of narcotics, that he would be able to afford to hire himself an attorney, the defendant?

"A Well, he was a petty pusher.

"Q A petty pusher?

"A Yes.

"Q He didn't make very much money, is that it?

"A I don't know how much money he made but he was not a big dealer.

"Q You do know that he has court appointed counsel, do you not?

"A That is what you have told me.

"Q And would you expect that a man that was pushing and selling narcotics would have enough money to get out of jail on bond?

"A Well, they use a lot of it themselves, they have to sell to support their habit, a lot of them.

"Q In this case, Mr. Chavez has not been able to make bond?

"A I know he has not made bond."

It will be noted that counsel for defendant asked the question "Would you expect that if Mr. Chavez here was a seller of narcotics, that he would be able to afford to hire himself an attorney, the defendant?" The witness answered "* * * he was a petty pusher." It was this answer to the question which defendant contends was prejudicial, and the court should have granted a mistrial on this ground.

In the case of State v. Saenz, Jr., 98 Ariz. 181, 403 P.2d 280 (June 16, 1965), and in State v. Kellington, 93 Ariz. 396, 381 P.2d 215, we held it was prejudicial error for a prosecuting witness to volunteer answers showing prior convictions or information in regard to defendant's being implicated in other crimes. The basis of our holding was that the officers testifying should have known and been admonished by the prosecuting attorney against volunteering such prejudicial evidence. It will be noted, however, that the facts in the instant case are altogether different. Counsel for defendant persisted in questions which would infer the innocence of defendant by showing that defendant did not have money with which to employ counsel or make bond, and that if he had been selling narcotics he would have been able to do so. The question called for an opinion, and the witness gave the opinion that "he was a petty pusher." The opinion was undoubtedly based upon the amount of the sale which he had already testified to in the instant case; therefore, it was not prejudicial. A defendant cannot complain of such an answer when his own question

relates to whether he was a seller of narcotics, and he deliberately brought about the answer by his question.

■ Defendant next contends that he was entrapped. In State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (June 10, 1965), which was a narcotics case where the facts were similar to those of the instant case, and it was the contention of defendant that he had been entrapped, we held:

"Assignment of Error No. 8 states that the trial court erred when it failed to grant a directed verdict of entrapment. Defendant asserts that the record clearly shows that the crime originated in the minds of agent Madrid and the informer Saenz. Defendant asserts that he was lured into the commission of the crime charged in order to prosecute him. This court has carefully reviewed the record, and we are unable to agree with the interpretation given the testimony by defendant. The record discloses that the informer Saenz merely afforded defendant an opportunity to commit the offense charged. Defendant willingly entered into the sale of the narcotics. He was not persuaded, or deceitfully lured into the commission of the offense.

"In State v. Hernandez, 96 Ariz. 28, 391 P.2d 586, we stated:

'* * * the defense of entrapment does not arise where one is ready to commit the offense given but the opportunity, Bloch v. United States, 9 Cir., 226 F.2d 185; Cline v. United States, 9 Cir., 9 F.2d 621.' 96 Ariz. at 31, 391 P.2d at 587.

"Entrapment occurs only when there is undue persuasion, deceitful representation, or inducement to commit a crime which a defendant had not contemplated and would not otherwise have committed. State v. Hernandez, supra; Hoy v. State, 53 Ariz. 440, 90 P.2d 623; Lutfy v. United States, 9 Cir., 198 F.2d 760, 33 A.L.R.2d 879." Lugo testified in the instant case:

"A He asked me if I was looking for some 'stuff' and something like that, and I said, 'That night not yet.'"

And then Lugo told him that he might want to get some later; that he did not have any money right then. Defendant stated that he would be in the pool hall about 8:30 p. m. or 9:00 o'clock if he wanted some, and then stated that he was referring to heroin. Then, in regard to the conversation that occurred at the back of the pool hall at about 9:00 p. m., Lugo stated:

"A Oh, he asked me if I wanted the stuff and I told him yes, and that I wanted one paper and I handed him a $5.00 bill and he handed me a small paper, a bindle."

As is shown by this testimony defendant was merely given the opportunity to make

a sale. There was no undue persuasion, deceitful representation, or inducement to commit a crime. The evidence would not have justified an instructed verdict, had the question of entrapment been presented to the court during the trial.

Defendant next assigns as error the inadequacy of the courtroom. There is no showing that defendant was prejudiced by the size of the courtroom.

■ Defendant contends that he was prejudiced by witnesses being brought to the court "shackled." He moved the court for a mistrial upon this ground. The trial court stated in the absence of the jury that there were probably about four witnesses for defendant and two officers, and apparently the witnesses were handcuffed together with chains two by two at the time they entered the courtroom. The handcuffs were not removed, and the bailiff immediately went to the officers and asked them to take the witnesses back out. The court then stated:

"I want the record to show that there was no testimony that was given during that time they were in the courtroom that could be heard."

The county attorney then said that the jury saw them—should have, or could have seen them. The court stated the record should show that they were within the view of the jury.

From early common law it has been held that a prisoner coming into court for trial is entitled to make his appearance free from shackles or bonds. This right has been held to extend to his witnesses. The reason for the rule is that a prejudice might be created in the minds of the jury against a prisoner, and therefore might interfere with a fair and just decision of his guilt or innocence. Exceptions to the rule have been recognized when the trial court has found the handcuffing of the accused or his prisoners to be necessary for safety. The facts in State v. Coursolle, 255 Minn. 384, 97 N.W.2d 472, 75 A.L.R.2d 755, cited by defendant, and those of the instant case are altogether different. The witnesses in the Coursolle case were compelled to sit throughout the trial in manacles, and it was upon that basis the court held that the rights of the accused were prejudiced. In the instant case, the witnesses were merely brought into the courtroom handcuffed and immediately taken out.

In State v. Pulliam, 87 Ariz. 216, 349 P.2d 781, we said:

"Defendant also urges that the trial court erred in not granting his motion for mistrial on the ground that defendant's manacles were removed in the presence of members of the jury panel. Actually from the record it appears that the manacles were removed at or near the doorway to the courtroom, although we are of the opinion

that preciseness in this matter is immaterial. In McDonald v. United States, 8 Cir., 1937, 89 F.2d 128, 136, where the defendant raised this same objection, it was said:

"'* * * It is too obvious for argument that hardly any other matter can be better relegated to the discretion of the trial court than that of safe-guarding the court, counsel, jury, and spectators, and assuring the continued presence and attendance of the accused at the trial. Absent incontrovertible evidence of hurt, the trial court should be permitted to use such means, to secure the named ends, as the nature of the case, the known criminal record, character, associates in crime, and reputation of the accused shall reasonably call for, and such is the rule enunciated in the few cases existing which deal with the question, * * *.'

"See also Cwach v. United States, 8 Cir., 1954, 212 F.2d 520. We find that the trial court did not abuse its discretion in this matter and hence the motion for mistrial was properly denied." 87 Ariz. at 223, 349 P.2d at 785.

In such matters the conducting of a trial rests within the sound discretion of the court, and, in our judgment, the court did not abuse its discretion in denying defendant's motion for a mistrial.

■ Defendant next contends that the court should have rejected the testimony of informer Lugo, and that, in the alternative, Lugo should have been treated as an accomplice and the court required corroboration of his testimony, for the reason that his testimony was improbable and unbelievable. The same questions were presented under similar facts in the case of State v. Moraga, 98 Ariz. 195, 403 P.2d 289 (June 17, 1965), in which we held that testimony of an informer does not have to be corroborated. As in the Moraga case, the testimony of informer Lugo was corroborated by the three officers who were the principal witnesses in the instant case—Cleveland, Hymer, and Dunn. The trial court, in the instant case, in overruling motion of counsel for defendant to strike the testimony of the witness Henry Lugo, Jr., from the record, stated:

"THE COURT: The Court has allowed great leniency insofar as any impeachment of Mr. Lugo was concerned because the Court felt that it should, and I think everything the defendant sought to get into the record on Mr. Lugo's testimony was admitted, and things you say would cause one concern about the credibility of the witness; however, I feel that it is still properly a jury question that the jury probably should be left—it should be left to the jury to decide the credibility of this witness, because I don't believe that the Court could say at this time

that no person could reasonably believe him beyond a reasonable doubt, insofar as the events he testified to concerning October the 7th."

The state should be able to use better informers in securing evidence than was Lugo; however, this case was fairly tried, great latitude was allowed in impeaching his testimony, and the jury had the opportunity of observing both the witnesses for the state and the defendant, and found him guilty. We find no prejudicial error.

Judgment is affirmed.

BERNSTEIN and UDALL, JJ., concur.