448 P.2d 478 (1968)
70 N.M. 677
STATE of New Mexico, Plaintiff-Appellee,
v.
Norman Lee SLICKER, Defendant-Appellant.
No. 181.
Court of Appeals of New Mexico.
November 22, 1968.
*479 John P. Duffy, Farlow & Duffy, Albuquerque, for appellant.
Boston E. Witt, Atty. Gen., Roy G. Hill, Asst. Atty. Gen., Santa Fe, for appellee.

*480 OPINION
WOOD, Judge.
Certain items of personal property were admitted into evidence. These items point to defendant as the person who committed the crime. Defendant attempted to suppress this evidence prior to trial and objected to the admission of the items during the trial. Appealing his conviction of aggravated burglary, defendant contends that the evidence should have been excluded because (1) his initial arrest was illegal, (2) seizure of the items was unreasonable, (3) his second arrest was illegal and (4) of alleged procedural defects occurring immediately after his initial arrest.
Two detectives of the Santa Fe Police Department were making a routine check of pawnshops. Their purpose was to check items that had been pawned against a list of items reported to have been stolen.
The detectives entered a pawnshop while defendant was attempting to pawn two rifles, a portable air conditioner and an adding machine. After the pawnbroker declined to accept the items, one of the detectives identified himself as a police officer and asked defendant where he obtained the items. His reply was Denver but he declined to say where in Denver. Defendant was then asked if he would accompany the detectives to the police station so the items could be checked out. According to the record, defendant replied, "All right. I have got nothing to hide."
Outside of the pawnshop, defendant was asked for identification. He produced a billfold and started to show a social security card, but flipped this card back in the billfold and returned the billfold to his pocket. He then pulled out another billfold and showed a second social security card bearing defendant's name. Although "a little hesitant at first" defendant showed the detectives the first social security card; it had the name of John M. Happer.
At this point the purpose of the detectives was to check the items that defendant attempted to pawn against police department reports of stolen goods. The detectives got into the front seat of the police car; defendant got into the back seat with the items he had attempted to pawn. Defendant then asked, "What about my car?" This resulted in questions by the detectives concerning the car. When defendant indicated he had no car registration, no driver's license and no papers indicating the car was his, he was arrested for not having a vehicle registration. Section 64-3-11, N.M.S.A. 1953.
One of the detectives then left the police car and went to defendant's car to get the number on the license plate. The trunk of the car was dented in, did not close and was held with wire. The trunk was open several inches. When the detective knelt to get the license number he saw a cash register in the trunk. The detective then looked through a window and saw a rifle (the third one) on the back seat. Defendant indicated the cash register and the third rifle were also obtained in Denver.
The detectives then had the car impounded and took defendant and the items of personal property to the police station. While the record is not clear, apparently it was at this point that the items admitted into evidence were seized by the police. The social security card belonged to Mr. Happer, an employee of the trading post who was beaten by the person committing the burglary. The other items had been taken from the trading post. The car was released to its owner, who was defendant's brother-in-law.

The initial arrest.
Defendant contends that the evidentiary items were taken from him as an incident to his arrest. He claims that his arrest was illegal and thus the items should not have been admitted as evidence. He asserts that he was under arrest from the moment the officers queried him inside the pawnshop concerning the items he attempted to pawn because at that point his liberty of movement was restricted. His position *481 is that the detectives did not have probable cause to arrest him at that point in time. Because of the alleged absence of probable cause defendant asserts his arrest was illegal.
Defendant's claims do not accord with the record. The only testimony is that of the two detectives. Both testified that defendant was free to go at any time before the arrest in connection with the car registration, that defendant was asked to go to the police station to check out the items that defendant attempted to pawn, and that he agreed to go.
However, we assume, but do not decide, that defendant was "seized" by the officers when they questioned defendant concerning the items he attempted to pawn; that thereafter he was in the custody of the detectives. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Was the seizure of defendant by the detectives conduct that violates the prohibitions of the United States and New Mexico Constitutions against unreasonable searches and seizures? It is undisputed that the detectives did not know of the Albuquerque burglary at the time nor did they know that the particular items in defendant's possession had been stolen. They were not looking for those particular items. Under these facts defendant claims there was an absence of probable cause to arrest him.
The absence of probable cause for arrest is not determinative. We are concerned here "* * * with an entire rubric of police conduct  necessarily swift action predicated upon the on-the-spot observations of the officer on the beat  * * *." Terry v. Ohio, supra. The inquiry is the reasonableness "* * * in all the circumstances of the particular governmental invasion of a citizen's personal security." "* * * [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The facts must be judged "* * * against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, supra.
Concerning the governmental interest involved, the Terry case states:
"* * * One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. * * *"
The detectives were discharging this legitimate investigative function when they identified themselves to defendant and asked him about the items he attempted to pawn. They had reports that similar items had been stolen. Defendant's answers were vague. Where had he acquired the items? "Just in Denver." In identifying himself he had an extra social security card bearing a name other than defendant's.
Under these circumstances the detectives' questioning, request for identification and request that defendant go to the police station to check the items attempted to be pawned did not amount to an unreasonable seizure of defendant. The detention of defendant from the initial question until he entered the police car did not bar the admission of the evidentiary items. Terry v. Ohio, supra; compare People v. Morales, 22 N.Y.2d 55, 290 N.Y.S.2d 898, 238 N.E. 2d 307 (1968).
After entering the police car, defendant's answers concerning his car justified his arrest for violation of § 64-3-11, N.M.S.A. 1953. His detention under this charge did not bar the admission of the evidentiary items in his trial for aggravated burglary. See State v. Ramirez, N.M., 444 P.2d 986, decided September 9, 1968.

*482 Seizure of the evidentiary items.

None of the items were taken from defendant prior to his arrest on the car registration offense. All the items were seized as an incident to that arrest. Except for the Happer social security card, all the items were seized without a search. However, the items taken were neither evidence of nor fruits of the car registration offense. Because the items seized are not related to the charge for which he was arrested, defendant claims that seizure of the items as an incident to that arrest is an unreasonable seizure. We disagree.
State v. Ramirez, supra, states:
"A majority of the cases in which the question has arisen hold that officers who search incidental to a lawful arrest may seize things incidental to another and wholly unrelated offense which may be uncovered by such a search. * * *"
See Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Annots., 4 L.Ed.2d 1982; 169 A.L.R. 1419 § 2, at 1420.
Abel v. United States, supra, states:
"When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."
See Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).
Although the evidentiary items were unrelated to the car registration offense, their seizure was not an unreasonable seizure violative of the constitutional prohibition because taken as an incident to the arrest for the car registration offense.

The second arrest.
On the day following his arrest on the car registration offense, an Albuquerque detective arrested defendant and took him and the evidentiary items to Albuquerque. The arrest warrant charged defendant with having taken specified items from the trading post while armed with a deadly weapon. The arrest warrant was issued by an Albuquerque Justice of the Peace on the basis of a criminal complaint, in affidavit form, signed by the Albuquerque detective.
Defendant contends that the evidentiary items should not have been admitted because this second arrest was illegal. He asserts the second arrest was illegal because the arrest warrant was issued in violation of § 41-1-2, N.M.S.A. 1953. This section provides, among other things, that arrest warrants may be issued upon affidavits showing "specific facts" within the "personal knowledge" of the officer that "constitute probable cause" for issuance of the warrant. Defendant claims that the Albuquerque detective did not have such "personal knowledge" and thus the warrant is illegal.
It is unnecessary for us to determine whether the Albuquerque detective had sufficient personal knowledge to constitute probable cause. See State v. Deltenre, 77 N.M. 497, 424 P.2d 782 (1966). Section 41-1-2, supra, authorizes the issuance of arrest warrants upon the officer's affidavit "* * * based upon information and belief when such affidavits are approved in writing by the district attorney, or his assistant * * *."
The detective's affidavit was based on information and belief and was approved in writing by the assistant district attorney. There was compliance with § 41-1-2, supra; the arrest warrant was valid; the second arrest was valid.

Asserted procedural defects after the first arrest.
Defendant contends that the evidentiary items should not have been admitted because of asserted procedural irregularities occurring after his arrest on the car registration charge. Defendant claims that he was not taken before a magistrate during the twenty-four hour period he was in the Santa Fe jail, that no bail was set and that he was denied opportunity to obtain counsel.
The record does not support defendant's contentions concerning bail and *483 counsel. The arrest warrant on the car registration charge states that the required bond is $300.00. This complies with § 41-4-1, N.M.S.A. 1953. The only testimony in the record is that upon being taken to the Santa Fe police station defendant was given opportunity to obtain counsel.
However, the record is clear that defendant was not taken before a magistrate while in custody of the Santa Fe police. Even where bail is not given, § 41-4-2, N.M.S.A. 1953 provides that the arresting officer "* * * shall immediately take the defendant before the court or officer who issued the warrant * * *." As used in this statute, "immediately" means with reasonable promptness and dispatch. See State v. Montgomery, 28 N.M. 344, 212 P. 341 (1923); State v. Garcia, 78 N.M. 777, 438 P.2d 521 (Ct.App. 1968). The reason for the appearance before the magistrate is to inform the defendant of the charge against him and of defendant's right to the aid of counsel. See § 41-3-1, N.M.S.A. 1953.
We assume, but do not decide, that the Santa Fe detectives violated § 41-4-2, supra, in failing to take defendant before a magistrate during the period defendant was in the custody of the Santa Fe police. This statutory violation would be pertinent to the car registration charge since the violation occurred in connection with that charge. The aggravated burglary charge is unrelated to the car registration offense. We fail to see how a violation of § 41-4-2, supra, in connection with the car registration charge raises an impediment to admission of lawfully seized items in defendant's trial on the unrelated charge of aggravated burglary. Compare State v. Lujan, (N.M.Ct.App.), 445 P.2d 749, decided September 20, 1968.
The judgment and sentence are affirmed.
It is so ordered.
OMAN and ARMIJO, JJ., concur.