462 P.2d 632

STATE of New Mexico, Plaintiff-Appellee,

v.

Fred Arthur SEDILLO and Epifanio Sedillo, Defendants-Appellants.

No. 347.

Court of Appeals of New Mexico.

Oct. 31, 1969.

Certiorari Denied Dec. 19, 1969.

Juan Burciaga, Albuquerque, for appellants.

James A. Maloney, Atty. Gen., Santa Fe, Vince D'Angelo, Asst. Atty. Gen., for appellee.

## OPINION

OMAN, Judge.

Defendants were indicted and convicted upon jury trial of burglary as defined in § 40A–16–3, N.M.S.A.1953 (Repl.Vol. 6, 1964). They appeal and rely upon three points for reversal. Defendant, Fred Sedillo, also relies upon a fourth point. These points will be considered in the order of their presentation in the brief in chief.

The first point is that the trial court erred in denying defendants' motion to suppress as evidence (1) a flashlight and pair of gloves taken from under the front seat of an automobile which was being driven by and apparently belonged to defendant, Epifanio Sedillo, and in which defendant, Fred Sedillo, was riding, and (2) testimony as to three typewriters, two dictaphones, an adding machine and transister radio taken from the trunk of the automobile. This equipment, except for the gloves and flashlight, had been stolen from law offices in Albuquerque after closing on November 5, 1968. The record fails to show just when defendants were stopped by two police officers, but it was some time between 7:00 p. m. on November 5, and 3:00 a. m. on November 6, 1968. During oral argument before this court, the attorney representing defendants on this appeal stated it was about 10:00 p. m. on November 5.

The motion to suppress was not made until after the testimony of three witnesses for the State, including one of the officers who stopped defendants, had been concluded. These witnesses testified in detail as to a break-in at the law offices and the identity of the equipment removed therefrom and found in the trunk of defendants' automobile.

Defendants were well-known to the police as burglars. The two officers were patrolling the downtown area of Albuquerque in a police car and were proceeding north on Second Street. They stopped for a traffic light, and defendants passed in front of them, going east on Marquette.

The officers thought they identified Fred as defendants passed. As the traffic light changed, the officers turned to the east behind defendants. It appeared to the officers that defendants kept looking back and were trying to evade them, so the officers pulled up closer. They noticed the trunk lid on defendants' car was not completely closed and was wired down.

As defendants passed over the railroad tracks, the officers were about two car-lengths behind. The trunk lid on defendants' car "* * * bounced up and it looked to both [officers] like these covers you have on typewriters * * *." They saw what appeared to them to be office machines.

Shortly after defendants crossed the railroad tracks they turned left on to Commercial Street. At this point the officers decided to stop defendants. The one officer went to the driver, Epifanio Sedillo, and asked for his driver's license. He had none, so the officer asked him to step out of the car. The officer then asked if he, the officer, could open the trunk, and Epifanio nodded.

Upon the giving of the nod by Epifanio the trunk was opened and the officers observed the equipment. Epifanio was immediately advised of his rights, and asked "* * * where he got it." Epifanio answered, "I found it." No further discussion occurred.

The officers than looked elsewhere in the car and found the gloves and flashlight. Defendants were placed under arrest and taken to the city jail and booked. At the time defendants were stopped, arrested and taken to the city jail, the officers had no knowledge of a burglary in the area. All police units were advised of what the two officers "* * * had found and they were all looking for a break-in at any of the commercial law offices and so forth. * * *" It was not until the next morning that someone at the law offices reported the burglary. The equipment was then claimed and returned to the owners.

It is the position of defendants that they were arrested at the time they were stopped; at that time there was not probable cause for the officers, as men of reasonable caution, to believe an offense had been or was being committed; and the validity of the search must " * * * rest upon the propriety of the underlying arrest. * * * "

The record is not clear as to when the officers placed defendants under arrest, but apparently it was after the trunk was fully opened and the contents thereof observed by the officers. It was then that Epifanio, who had nodded assent to the opening of the trunk was advised of his rights. The prior stopping of defendants to investigate, although an invasion of their personal security, was not necessarily an arrest. As was said in State v. Lewis, 80 N.M. 274, 454 P.2d 360 (Ct.App.1969):

"In appropriate circumstances and in an appropriate manner, a police officer may approach a person to investigate possible criminal behavior even though the officer may not have probable cause for an arrest. To justify such an invasion of a citizen's personal security, the police officer must be able to specify facts which, together with rational inferences therefrom, reasonably warrant the intrusion. These facts are to be judged by an objective standard—would the facts available to the officer warrant a person of reasonable caution to believe the action taken was appropriate? Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968); State v. Slicker, 79 N.M. 677, 448 P.2d 478 (Ct.App.1968)."

Here the facts known to the officers at the time they stopped defendants are set out above. In our opinion these facts reasonably warranted the stopping of the vehicle and the invasion made into defendants' personal security. Compare Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925); Brinegar v. United States, 338 U. S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Deltenre, 77 N.M. 497, 424 P.2d 782 (1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967); State v. Slicker, 79 N.M. 677, 448 P.2d 478 (Ct. App.1968).

The trunk was opened and the machines examined at close range, but this was with the consent of Epifanio. We need not, and do not, decide whether the officers were justified in opening the trunk and examining the machines without consent, because they had consent. Epifanio was expressly asked by one of the officers if he, the officer, could open the trunk, and Epifanio nodded. It is true the record fails to state anything further as to the response by Epifanio to the inquiry made of him.

According to Merriam-Webster's Third New International Dictionary, Unabridged (1966), "nod" is defined as:

"to incline the head with a quick motion: make a quick downward motion of the head whether as a sign (as of assent, salutation, or command) or involuntarily (as from drowsiness) [her cousin *nodded* in agreement]; * * * to incline (as the head) or bend downward or forward; specif: to make a quick downward motion of (the head) as a sign * * * [*nodded* his head in approval] * * * "

Epifanio nodded, which clearly indicated approval or assent, and he did not shake his head, which, ordinarily in the context with which we are here concerned, means from side to side and signifies disapproval or dissent. The conduct of the officer in asking permission, reasonably suggests that the requested permission or consent was granted. See State v. Campbell, 281 Minn. 1, 161 N.W.2d 47 (1968), in which defendant nodded in the " 'yes' fashion" to an inquiry of him by police officers as to whether it " 'was all right to take some blood samples' " from him. The nod was recognized as an affirmative answer to the inquiry and as indicating consent to the taking of the blood samples.

The consent here, evidenced by the nod of Epifanio, is unlike the acquiescence to a claim of lawful authority discussed in

Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and in State v. Lewis, supra.

After opening the trunk and examining the machines, the officers then proceeded to search the remainder of the car and found the gloves and flashlight, at which point they clearly had reasonable grounds to conduct a search incident to an arrest. See Carroll v. United States, supra; Brinegar v. United States, supra; State v. Lewis, supra; State v. Slicker, supra.

We find no merit to defendant's first point.

Defendants argue their second and third points together. These points relate to claimed error on the part of the trial court in permiting prosecution witnesses to testify as to the police records, character and reputation of defendants, and in permitting the Assistant District Attorney, on cross-examination of Fred, to make inquiry as to this defendant's drug addiction and the daily cost of satisfying this addiction.

■ As to the police records, character and reputation of defendants, the entire testimony along these lines, except for the testimony of Fred as to his drug habit, was elicited by defendants themselves on cross-examination of the two police officers who testified for the State. A defendant cannot be heard to complain on appeal that he was prejudiced by evidence which he injected into the case. State v. Chavez, 98 Ariz. 236, 403 P.2d 545 (1965); State v. Gortarez, 96 Ariz. 206, 393 P.2d 670 (1964); People v. Feldkamp, 51 Cal.2d 237, 331 P. 2d 632 (1958); People v. Realmo, 28 Ill. 2d 510, 192 N.E.2d 918 (1963); State v. Borrego, 52 N.M. 202, 195 P.2d 622 (1948); State v. Nunes, 444 P.2d 542 (Or.1968); People v. Gray, 57 Ill.App.2d 221, 206 N.E. 2d 821 (1965).

■ Defendants complain that some of the remarks by the officers were gratuitous and not called for by the questions asked of them. We disagree. However, even if defendants' position in this regard were correct, they still could not be heard to complain. At no time did they object to

any answer given by either of the officers. Under these circumstances, no error was preserved for review. State v. Sisneros, 79 N.M. 600, 446 P.2d 875 (1968); State v. Wallis, 34 N.M. 454, 283 P. 906 (1929); State v. Ortega, 79 N.M. 744, 449 P.2d 346 (Ct.App.1968); State v. Gutierrez, 79 N.M. 732, 449 P.2d 334 (Ct.App. 1968).

■ As to the cross-examination by the Assistant District Attorney of Fred, concerning drug addiction and the daily cost of securing drugs to satisfy this addiction, there was likewise no preservation of error for review, if in fact error was committed. No objection was made to any question asked or answer given, and defendants' own counsel questioned this defendant further on re-direct examination concerning his drug habit and the fact that it was known to the Albuquerque police. See State v. Sisneros, supra; State v. Ortega, supra; State v. Gutierrez, supra.

■ The last point is raised solely by Fred. He urges that the evidence is insufficient to sustain his conviction.

An examination of the record fails to disclose that the question of the sufficiency of the evidence to support his conviction was ever presented to the trial court. Under these circumstances, he cannot demand a review of the evidence as a matter of right. State v. Lee, 78 N.M. 421, 432 P.2d 265 (Ct.App.1967). See also, State v. Slayton, 52 N.M. 239, 196 P.2d 734 (1948); State v. McKenzie, 47 N.M. 449, 144 P.2d 161 (1943). However, as in State v. Lee, supra, we have examined the record to determine if fundamental error was committed.

" 'The doctrine of fundamental error is resorted to in criminal cases only if the innocence of the defendant appears indisputable, or if the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950). If there is a total absence of evidence to support a conviction, as well as evidence of an exculpatory nature, then an appellate court has

the duty to see that substantial justice is done and to set aside the conviction. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967). * * * '"

State v. Tapia, 79 N.M. 344, 443 P.2d 514 (Ct.App.1968); State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967).

It is true that Fred testified he had been picked up by Epifanio about five or ten minutes prior to their being stopped by the police officers; Epifanio was taking him to his grandmother's home on Commercial Street where he was living; and he had not entered the law offices. However, under the record here, the jury was not required to accept his testimony. See Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968); Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940).

Except for the apparent ownership of the automobile by Epifanio, the fact that he was driving, and the fact that he stated he had found the office equipment, the evidence is equally inculpatory as to both. This evidence is outlined above.

We are unable to say that the innocence of Fred is indisputable, or his guilt so doubtful as to shock the conscience if his conviction be permitted to stand. Nor can we say there is a total absence of evidence to support his conviction.

The judgment of conviction should be affirmed.

It is so ordered.

HENDLEY, J., concurs.

SPIESS, Chief Judge (concurring in part and dissenting in part).

I concur in the majority opinion insofar as it affirms the conviction of defendant Epifanio Sedillo. With respect to defendant Fred Arthur Sedillo, I am unable to concur in the view of the majority and respectfully dissent.

I think the court here should apply the doctrine of fundamental error and through its application determine whether a miscarriage of justice has occurred. The Supreme Court in applying the doctrine in State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967) said:

"We held, in State v. Garcia, 19 N.M. 414, 421, 143 P. 1012, 1014 (1914), that where there is a total absence of evidence to support a conviction as well as evidence of an exculpatory nature, this court has a duty to see that substantial justice is done. Also, see State v. Armijo, 35 N.M. 533, 2 P.2d 1075 (1931). We feel that this case calls for the application of that doctrine. Not only was there an absence of any evidence of participation by Salazar, as that term is defined in State v. Ochoa [41 N.M. 589, 72 P.2d 609] supra, but the record is replete with evidence suggesting he was incapable of performing any act or forming the requisite criminal intent. Under the facts here, we may properly consider whether substantial evidence to support a finding of guilt is present."

The record, as I read it, indicates a complete lack of evidence of guilt as to Fred Arthur Sedillo. The only proof offered in support of the charge against him is that he was a passenger in an automobile driven by defendant Epifanio Sedillo. The automobile was stopped by the police and the office equipment later identified as the stolen property was found in the trunk of the car. It seems undisputed that the recently stolen office equipment so found furnished the sole basis for conviction.

In State v. Romero, 67 N.M. 82, 352 P.2d 781 (1960) the court, in considering the sufficiency of the evidence in a burglary case, said:

"Assuming, without deciding, that the unexplained exclusive possession of recently stolen goods may be substantial evidence on which to sustain a conviction—*compare* State v. Lott, 1936, 40 N.M. 147, 56 P.2d 1029, *with* State v. White, 1933, 37 N.M. 121, 19 P.2d 192—the first issue presented is whether, under the above state of facts, the state has shown exclusive possession of the stolen property by the appellant. We think not.

52

"In State v. White, 1933, 37 N.M. 121, 124, 19 P.2d 192, 194, we stated:

'Possession of the fruits of crime * * * involves knowledge, dominion, and control, with power of disposal, or voice in the power of disposal, in the alleged possessor. * * *

'It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property, when such possession could also, with equal right, be attributed to another. * * *' State of Idaho v. Frank Sullivan et al., 34 Idaho 68, 199 P. 647, 17 A.L.R. 902, at pages 907 and 908.'

"At best the state has shown that the appellant had constructive possession of the jewelry by virtue of occupying the same room in which it was found. There was no evidence showing or tending to show that the appellant had knowledge, control or voice in the power of disposal concerning the jewelry."

In the instant case the prosecution may have shown constructive possession of the office equipment in Fred Arthur Sedillo by reason of the fact that he was a passenger in the automobile at the time the equipment was found. There was no evidence from which it could be said that he had knowledge, control or a voice in the power of disposal of the equipment.

In State v. Romero, supra, the court adopted the following definition of "exclusive":

"To create an inference of guilt, the term 'exclusive' does not mean that the possession must be separate from all others provided there is other evidence to connect defendant with the offense."

The record is barren of any other evidence connecting or tending to connect defendant Fred Arthur Sedillo with the offense.

To meet the requirement expressed in State v. Salazar, supra, the record discloses evidence of an exculpatory nature in the testimony of the defendant, Fred Arthur Sedillo, which is summarized in the majority opinion.

In summary, it is my view that there is no evidence which would support a conclusion that Fred Arthur Sedillo either burglarized or participated in burglarizing the law offices.

In my opinion a clear miscarriage of justice has occurred in the conviction of Fred Arthur Sedillo and I consequently would reverse the judgment as to him.