144 P.2d 161

## STATE v. McKENZIE.

No. 4755.

Supreme Court of New Mexico.

Nov. 17, 1943.

Rehearing Denied Jan. 12, 1944.

C. C. Davidson, of Tucumcari, E. P. Ripley and H. A. Kiker, both of Santa Fe, for appellant.

Edward P. Chase, Atty. Gen., and Harry L. Bigbee, Asst. Atty. Gen., for appellee.

THREET, Justice.

The appellant, Homer McKenzie, was convicted in the District Court of Quay County of the larceny of a calf, and was sentenced to serve a term in the State Penitentiary for not less than two nor more than five years, and that he pay the costs of his prosecution. Upon an appeal to this Court he assigns error as follows:

First, there is no substantial evidence to support the verdict of the jury.

Second, the trial court's denial of appellant's motion for a new trial was an abuse of discretion.

The information in its charging portion is as follows: That Homer McKenzie stole one calf from W. W. Minter.

The question presented by the first assignment of error is one of fact. The record discloses that appellant failed to invoke a ruling from the trial court, either at the close of the state's case, or at the close of the whole case by a motion for an instructed verdict of not guilty for lack of proof of the crime charged. Having so failed, he is now precluded from raising the question here, State v. Garcia, 19 N.M. 414, 143 P. 1012; State v. Starr, 24 N.M. 180, 173 P. 674; State v. Board

of Trustees of Town of Las Vegas, 32 N. M. 182, 253 P. 22; Cavins v. Armstrong & Armstrong, 37 N.M. 141, 19 P.2d 747; unless the state, by failing to interpose a timely objection, has conceded the point.

Appellant's main contention is that there is no substantial evidence to support the verdict of the jury. An application of the foregoing rule would be sufficient to dispose of this appeal, but since the state does not invoke a ruling thereon, and both parties seek a review of the question of the sufficiency of the evidence to sustain a conviction of the offense charged, we proceed to consider that question.

The question here involves two separate groups of cattle. One of these groups consists of five head of white faced calves, three steer and two bull calves. On November 4, 1941, W. W. Minter was the owner of three of the calves and two were the property of his son, a boy about fifteen years of age, whose name does not appear in the record. W. W. Minter delivered these calves on November 4, 1941, to Walter Perkins, who took them to Tucumcari for the purpose of selling them through the sales ring there. The calves were not sold through the sales ring on account of bad weather, and Perkins took the calves to the Parkhill ranch five miles out of Tucumcari on November 6, 1941. These calves were kept in a small corral until November 9th at the Parkhill place, and then were turned into a 540 acre pasture, which adjoined the pasture of John McDonald, previously known as the Eager ranch consisting of fifteen sections. The McDonald ranch joined the Parkhill ranch and almost surrounded it. The fences between the two ranches were not good. On the following Monday, Parkhill's son missed two of the calves and made some search but could not find them. Others also looked for the calves and failing to find them, advertisements were inserted in the Tucumcari paper for the calves as strays. These calves were all branded with the lazy F. H. brand on the right hip. The two belonging to the Minter boy were branded low down on the hip. The two calves that were missing were never located by Minter or the Parkhill boy, and no information was obtained as to their whereabouts through advertisements in the paper.

On January 1, 1942, a calf bearing the lazy F. H. brand on the right hip was found in a group of cows and calves being inspected at Clovis, New Mexico, for the appellant. The calf was with a herd of cattle bearing the "C.S." brand which belonged to the appellant. When the calf bearing the lazy F. H. brand was discovered by the inspector at Clovis, the appellant claimed that the calf came with the "C.S." cows purchased by him at Colfax, New Mexico. In order to determine whether the calf belonged to the "C.S." cows as claimed by the appellant, the cattle inspector and the appellant placed the calf with the "C.S." cows to see whether it would take up with and suck any of the cows. The calf failed to claim any of the "C.S." cows as its mother, whereupon the

appellant gave the Cattle Sanitary Board a check in payment for the calf. The fences between the Parkhill ranch and the McDonald ranch were in poor condition, and some testimony was to the effect that a horse could go over the fence and a cow could go through it at several places.

As to the other group of cattle: In October, 1941, Cleo Norwood arranged to purchase some cattle from one Roy Lewis. These were "C.S." cattle and were received by Norwood and appellant at Colfax, New Mexico. Appellant bought an interest in the cattle after the original trade had been made by Norwood. There were 245 head of "C.S." cows and thirteen calves not branded, according to the inspection made at the time of delivery. The cattle were shipped to Tucumcari and were taken to the McDonald ranch by Norwood and appellant on October 30, 1941. On November 24th, the appellant moved sixty three of the "C.S." cows and twelve calves from the McDonald ranch to the wheat pasture near Clovis. Before moving the cows and calves from the McDonald ranch, appellant requested that they be inspected by John McDermitt, a cattle inspector. An inspection failed to find any calves bearing either the lazy F. H. brand or the "C.S." brand. Some time after the calves were missing from the Parkhill pasture, the record does not disclose when, Perkins, to whom they had been delivered, paid Minter for the calves that were missing.

The appellant sold to H. H. Gray of Portales, New Mexico, some cows and calves including the cows and calves that he had moved from the McDonald ranch to the wheat pasture near Clovis. The sale took place the latter part of December, 1941, and delivery was made on the first day of January, 1942. Before delivery was made to Gray of the cattle so sold, appellant requested that the cattle inspector at Clovis, New Mexico, inspect the cattle that he was to deliver to Gray. Haskell Worley inspected the cattle and found one calf bearing a "C.S." brand on the right ribs and one with the lazy F. H. brand on the right hip. When the cows and calves were moved by the appellant from the McDonald ranch to the wheat pasture near Clovis, one of the "C.S." cows and a calf were left by appellant at the McDonald ranch. When it was found that the calf bearing the lazy F. H. brand did not suck any of the "C.S." cows, the appellant made no further claim to it, but issued his check in payment thereof to the Cattle Sanitary Board.

Upon this state of facts, the appellant was convicted of stealing the calf found in his possession and bearing the lazy F. H. brand from W. W. Minter in Quay County.

Appellant's chief argument is that there is no proof of the corpus delicti.

The state argues that the unexplained possession by appellant of the property described in the information, recently after the alleged larceny, raises the presumption that a larceny has been committed and that appellant was guilty thereof. The

weakness in the state's argument lies in the fact that there is a total failure of proof that a larceny had been committed by appellant or any other person. No contention was made by the owner or anyone else that the calf had been stolen until it was found in the possession of appellant. All parties concerned were under the impression that the calf had strayed from the Parkhill pasture.

. The rule contended for by the state is discussed in State v. Eppers, 138 Or. 340, 3 P.2d 989, 992, 6 P.2d 1086, which cites 36 C.J. § 427, p. 867 et seq.:

"Subject to the limitations hereinafter considered, the rule may be stated broadly that proof of the possession by accused of the property described in the indictment recently after the larceny raises the presumption that he was the thief. The rule itself indicates the condition under which it operates, that is, to raise the presumption of guilt there must be proof: (1) That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it. (2) That the property shown to have been possessed by accused was the stolen property. (3) That the possession was recently after the larceny."

■ "The corpus delicti in larceny is constituted of two elements, that the property was lost by the owner, and that it was lost by a felonious taking." State v. Cason, 23 N.M. 77, 167 P. 283.

"The term 'corpus delicti' is made up of two elements: It must be shown, first, that a certain result has been produced, as, for example, that a cow has been stolen; second, that some one is criminally responsible therefor." State v. Eppers, supra.

"There must be clear and unequivocal proof of the corpus delicti. Every criminal charge involves two things: First, that an offense has been committed; and, secondly, that the accused is the author, or one of the authors, of it." Sanders v. State, 167 Ala. 85, 52 So. 417, 419, 28 L.R.A.,N.S., 536.

■ In State v. White, 37 N.M. 121, 19 P.2d 192, 194, we said:

"The unexplained possession by one of goods belonging to another does not raise the presumption that a larceny has been committed, and that the possessor is a thief; additional evidence is necessary to establish the corpus delicti."

"To support a conviction there must be evidence that the property in question was actually stolen." George v. United States, 1 Okl.Cr. 307, 97 P. 1052, 1054.

"Possession of stolen goods alone is insufficient to convict one of larceny of such goods." State v. Eppers, supra.

The only proof on the part of the state to show that the calf in question was stolen by the appellant is that it was found in his possession, in another county, about two months after it was missed from the Parkhill ranch. The undisputed evidence is that the calf in question was turned into a pasture adjoining the McDonald ranch

where appellant's cattle were located. The fence between the two pastures was not in good condition, and in places it was such that horses and cows could go from the Parkhill pasture into the pasture where the appellant's cattle were located. Appellant was not in the vicinity of the McDonald ranch, where his cattle were on pasture, except upon the occasion when they were placed there and at the time he took them away. At the time appellant moved his cattle from the McDonald ranch to the wheat pasture near Clovis, he had them inspected by John McDermitt, who testified that there were no branded calves among the cattle belonging to appellant, yet when appellant sold the cattle at Clovis several weeks later they were again inspected and two calves were found branded. One with a "C.S." brand on the right ribs and the other with the lazy F. H. brand on the right hip. No explanation is offered as to why the two branded calves were not discovered before they left the McDonald ranch, with the possible exception that it was in the wintertime and the hair on the calves was long. The calf branded with the lazy F. H. brand had to be clipped at Clovis before the inspector there could discover what brand, if any, it bore. If the inspector at the McDonald ranch was mistaken in his testimony that none of the calves moved by appellant were branded when they left that ranch, and we must assume that he was, then it is just as plausible to assume that appellant moved the calf bearing the lazy F. H. brand by mistake. As it may not be doubted, in view of his subsequent acts and conduct, that appellant would have left the calf at the McDonald ranch if its identity had been discovered by the inspector.

The action of appellant in having the cattle inspected on two different occasions does not agree with the idea that he had stolen the calf at the McDonald ranch, as he made no effort to conceal it nor made any claim to its ownership after it was discovered that it was branded. His actions did not conform to those of a thief. No effort was made to dispose of the calf in any manner other than that followed by all stockmen in placing their cattle upon the market.

■■ Of course the corpus delicti may be proven by circumstantial evidence, but something more than possession alone must be shown. Each case turns upon the particular facts involved. In the case at bar the evidence of the state was as consistent with appellant's innocence, that the calf strayed from the Parkhill pasture into the McDonald ranch where appellant's cattle were, and that it was moved by him by mistake to the wheat pasture near Clovis, as it was with his guilt.

In State v. Craig, 28 N.M. 110, 206 P. 513, we held: Where there is no substantial evidence of the corpus delicti, the verdict will be set aside on appeal. In the prosecution for larceny of neat cattle, evidence that defendant drove unbranded cattle from one county to another and there branded them is not of itself sufficient to prove larceny. In cases of

this nature some fact or circumstance of an inculpatory nature is usually shown to characterize the act as unlawful.

We have no such fact or circumstance here. When the cattle inspector found the calf was branded, he asked the appellant where the calf came from, and appellant stated that it came with the "C.S." cows. When it was found that the calf tailed to claim any of the "C.S." cows as its mother, appellant made no further claim to its ownership, but issued his check in payment thereof to the Cattle Sanitary Board. No criminal act was shown on the part of appellant, nor any fact from which a criminal act could be inferred.

The state's evidence shows that appellant acted open and above board at all times in connection with the handling of his cattle. He had them inspected before they were moved from the McDonald ranch to the wheat pasture near Clovis, and again when he was selling them to Gray. Such actions are not in harmony with the idea that he had committed the crime of larceny. If his intentions were to steal the calf, he must have known that this fact would have been discovered by the cattle sanitary inspector, whose duty it is to check the movement of cattle and apprehend and prosecute those who seek to appropriate the property of others to their own benefit.

In State v. Miller, 41 N.M. 618, 72 P. 2d 1088, 1090, we said; "The appellant's subsequent conduct and dealing with the horse may be looked to to show with what intent he first took possession of him. Shortly after leaving the Cage Riley ranch he sold the animal under a false brand and claimed in his statement to the sheriff that it bore another. The possibility of mistake is eliminated by the defendant's statements. This, with his unexplained possession of the stolen horse, is sufficient to make a prima facie case of guilt and establish the corpus delicti."

If subsequent acts and conduct are sufficient to make a prima facie case of guilt and establish the corpus delicti, then the converse of the rule must be correct. When all the subsequent acts and conduct of appellant are in conformity with an honest purpose, they would rebut the inference of guilt and fail to establish a corpus delicti.

It is well known that cattle stray from one herd to another, and their presence in the herd to which they do not belong may not be discovered until they have arrived at the shipping station or the sales ring. To say that one may be charged and prosecuted for larceny under such circumstances would, to say the least, cast suspicion on many of our best citizens, if not subject them to criminal action.

As the judgment will have to be reversed, it will not be necessary to pass upon appellant's second assignment of error.

The judgment will be reversed, with instructions to grant appellant a new trial. It is so ordered.

SADLER, C. J., and MABRY, BICKLEY, and BRICE, JJ., concur.