14 P.3d 32

2000-NMSC-036

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Daniel SOSA, Defendant–Appellant.**

No. 26,047.

Supreme Court of New Mexico.

Nov. 15, 2000.

768

Liane Kerr, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Steven S. Suttle, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

SERNA, Justice.

{1} Defendant Daniel Sosa appeals his conviction for first degree deliberate intent murder contrary to NMSA 1978, § 30–2–1(A)(1) (1994). *See* Rule 12–102(A)(1) NMRA 2000 (appeals from sentence of life imprisonment taken to the Supreme Court). Defendant asserts on appeal that there is insufficient evidence to support the verdict, that the State failed to prove deliberate intent for first degree willful and deliberate intent murder, and that the State failed to prove the corpus delicti. We affirm Defendant's conviction.

### I. Facts and Background

{2} At approximately 6:30 p.m. on January 11, 1999, Ronnie Barela was shot in the face while standing on his front porch. During the investigation, police found a trail of teeth, bone fragments, and blood between Barela's house and the house of one of Barela's neighbors, Daniel Madison. The location and trajectories of the wounds as well as the presence of blood and tissue at the crime scene indicated that Barela was shot several more times as he attempted to escape from his assailant. Daniel Madison testified that he was standing on his front porch and saw the victim drive home at about 6:30. Madison testified that a minute or two later, he heard five or six gunshots; Madison then discovered and assisted Barela. Madison tried to stop Barela's bleeding while Madison's wife called 911. Madison asked Barela who shot him, and Barela replied, "Daniel Sosa." Barela repeated the name numerous times, and motioned with his fingers to describe a gun. Barela repeated his identification of "Daniel Sosa" to a police officer who subsequently arrived. Barela did not specifically identify "Daniel Sosa, Senior" (Defendant) or refer to Defendant's nickname, "Three-finger Sosa." Barela sustained a total of four gunshot wounds, in the face, right arm, left buttocks, and the back of the upper portion of his leg, and subsequently died from his wounds.

{3} A police officer noted that a holstered hand gun was near the front door of Barela's house, as was the victim's wallet. The officer testified that there was no blood or other evidence within the house to indicate that an altercation took place inside.

{4} Sylvia Sosa, Defendant's sister, testified that Defendant arrived at their mother's house on January 11th between 8:30 and 9:00 p.m. Sylvia testified that Defendant had shaved his beard and head. A surveillance tape from a convenience store dated January 10, 1999, showed Defendant with a graying beard wearing a black hat. Sylvia stated that he was not behaving in a typical manner and demanded that she take him to the military base. She testified that she confronted Defendant after hearing from others that Defendant was trying to get his son, Daniel Chris Sosa, to take the blame for the murder. Sylvia testified that Defendant admitted to her that he killed Barela. She also made a statement to the police regarding this admission.

{5} Following a jury trial, Defendant was convicted of first degree murder for the

death of Ronnie Barela. The trial court sentenced Defendant to life imprisonment.

## II. Discussion

### A. Sufficiency of the Evidence

{6} "[T]he test to determine the sufficiency of evidence in New Mexico ... is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.; accord State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319.

{7} Defendant argues that there was insufficient evidence for a rational jury to find that he murdered Ronnie Barela. Defendant argues that no physical evidence connects him to the crime, and that there were no eyewitnesses who could identify him as the shooter. Defendant further suggests that some evidence more strongly connected his son to the murder. Finally, Defendant calls Sylvia Sosa's credibility into question. We reject Defendant's arguments.

{8} "An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Sutphin,* 107 N.M. at 130–31, 753 P.2d at 1318–19. Additionally, we note that credibility of witnesses is for the jury. *State v. Riggs,* 114 N.M. 358, 362–63, 838 P.2d 975, 979–80 (1992) (rejecting the defendant's argument that a witness was not credible, stating "[t]he jury, and not this court, however, resolves questions of credibility and the weight to be given to testimony"). Daniel Chris Sosa, Defendant's son, testified that he did not shoot the victim. The victim identified the shooter as "Daniel Sosa," and Sylvia Sosa testified that

Defendant admitted to her that he shot the victim. We believe there is substantial evidence from which a rational jury could find beyond a reasonable doubt that Defendant was the assailant.

{9} Defendant argues that there was no evidence to support deliberate intent necessary to sustain his first degree murder conviction. As this Court has noted, " '[d]eliberate intention' is defined as, 'arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action.' " *State v. Cunningham,* 2000–NMSC–009, ¶ 25, 128 N.M. 711, 998 P.2d 176 (quoting UJI 14–201 NMRA 2000). "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Vigil,* 110 N.M. 254, 255, 794 P.2d 728, 729 (1990) (quoted authority and quotation marks omitted).

{10} Defendant relies upon *State v. Garcia,* 114 N.M. 269, 837 P.2d 862 (1992), arguing that his sister's testimony regarding Defendant's admission is insufficient to form the foundation for deliberate intent. In *Garcia,* this Court discussed at length the parameters of deliberate intention and concluded that the evidence in that case did not support an inference that the defendant committed first degree murder. *Id.* at 271–75, 837 P.2d at 864–68. *Garcia* is plainly distinguishable on its facts, however. The Court described evidence that the defendant was intoxicated, drinking beer "throughout the morning and the night before" the killing and consuming "at least ten beers and three shots of whiskey that afternoon," prior to stabbing the victim around 3:30 p.m. *Id.* at 270, 837 P.2d at 863. We concluded that the evidence regarding the defendant's state of mind demonstrated that he quarreled and reconciled with the victim twice, and then they fought a short time later, punching and shoving each other, before the defendant cut the victim in the face and stabbed him in the chest, consistent with a rash, impulsive killing rather than one of deliberate intent. *Id.* at 274–75, 837 P.2d at 867–68. This Court noted that the defendant stated, "Remove [the victim] away from me or you're not going to be seeing him for

the rest of the day," suggesting an intent to fight, not an intent to kill. *Id.* at 275, 837 P.2d at 868. Thus, because all of the facts in *Garcia* pointed away from careful thought and weighing of consideration for and against killing the victim, thereby negating any possible reasonable inference of deliberation, *Garcia* does not assist Defendant in the present case. *See State v. Begay*, 1998–NMSC–029, ¶ 46, 125 N.M. 541, 964 P.2d 102 (noting that, in *Garcia*, "the evidence was consistent with a rash and impulsive killing").

{11} Defendant also relies on *Cunningham*, in which the defendant, a few months prior to the murder, told the victim, " 'I'll kill you, I'll shoot you, I don't care,' " arguing that there is no evidence that he made a statement that he intended to kill the victim. 2000–NMSC–009, ¶ 4, 128 N.M. 711, 998 P.2d 176. In *Cunningham*, this Court noted that there was evidence that the defendant was the aggressor who caused the armed conflict and that a reasonable juror could believe that the defendant fired the last bullet with deliberate intent after the victim was incapacitated and defenseless, in addition to the threat the defendant made to the victim. *Id.* ¶¶ 27–28. We concluded that the jury could reasonably find that the act of firing a fatal shot at an incapacitated victim was "an act of a man who had decided as a result of careful thought and the weighing of the consideration that he was going to take the life of the [victim]." *Id.* (quoted authority and quotation marks omitted). The absence of a similar threatening statement in the present case does not require the Court to conclude that there was insufficient evidence.

{12} This case is somewhat similar to *State v. Garcia*, 95 N.M. 260, 620 P.2d 1285 (1980). In *Garcia*, this Court noted that the evidence demonstrated that the defendant "was the aggressor in the altercation with the deceased," and that "the deceased started running away when [the defendant] pulled out a gun." *Id.* at 261, 620 P.2d at 1286. The defendant argued that "only a few seconds elapsed between the time he pulled the gun and shot the deceased; he therefore did not have the opportunity to weigh or consider the reasons for or against his course of conduct." *Id.* In the present case, Defendant also contends that a jury could not reasonably find that Defendant had time to form the requisite intent. We have repeatedly recognized that deliberation may be achieved in a short period of time. *Id.* at 262, 620 P.2d at 1287 (concluding that "the issue of deliberate intent was a question for the [jury]"); *accord Garcia*, 114 N.M. at 275, 837 P.2d at 868 ("We do not dispute the State's contention that [defendant] had sufficient time to form a deliberate intention to kill. . . . [A] defendant can form the requisite intent for first degree murder in a short period of time.").

{13} Barela's gunshot wounds support the inferences that he was shot in the face while standing on his porch, and that he fled from his attacker, who continued to fire upon him. He was apparently unarmed and attempting to escape, indicating that he was defenseless against an attacker armed with a gun. The facts of the present case are comparable to the factual situations of several first degree murder cases involving deliberate intent. As noted above, the defendant in *Garcia*, 95 N.M. at 261, 620 P.2d at 1286, was the aggressor who shot the victim as the victim was running away. In *Cunningham*, 2000–NMSC–009, ¶ 28, 128 N.M. 711, 998 P.2d 176, the defendant fired the fatal shot at an incapacitated and defenseless victim. Finally, in *State v. Coffin*, 1999–NMSC–038, ¶ 76, 128 N.M. 192, 991 P.2d 477, the evidence demonstrated that the defendant shot the victim four times in the back and in the back of the head as the victim was walking away from him, supporting the jury's finding of deliberate intent. *See State v. Lucero*, 88 N.M. 441, 443, 541 P.2d 430, 432 (1975) (reviewing evidence that the defendant went to the location of the victim armed with a loaded gun, accused the victim of being an informant, exchanged unpleasant words with the victim, and then shot the victim, and concluding that sufficient evidence supported deliberate intention); *see also State v. Salazar*, 1997–NMSC–044, ¶ 46, 123 N.M. 778, 945 P.2d 996 (concluding that "testimony alleging that the Defendant pursued [the victim], pointed the gun, and fired provides an adequate source of direct evidence that the Defendant acted with deliberation, intending to kill [the victim]").

{14} Ronnie Barela arrived home a few minutes before he was shot. He received a gunshot wound to his face while standing, unarmed, on his porch. He attempted to escape his attacker, who continued to fire upon him. Prior to his death, Barela identified the shooter as "Daniel Sosa." Defendant's sister, Sylvia Sosa, testified that Defendant admitted that he killed the victim. Based upon the evidence, a reasonable jury could determine that Defendant intended to kill Barela when he went to Barela's home armed with a gun, waited for him to arrive, and then shot the unarmed victim numerous times. A reasonable jury also could have found that Defendant formed the deliberate intent to kill Barela during the time between shooting him in the face on his porch and pursuing the wounded and defenseless victim into the street and shooting him from behind. Both theories are supported by sufficient evidence, and it is for the jury to determine which situation occurred. *See State v. Motes*, 118 N.M. 727, 730, 885 P.2d 648, 651 (1994). Viewed in the light most favorable to upholding the verdict, we conclude that the evidence is sufficient to support the jury's finding of deliberate intent and to support the jury's verdict.

## B. Corpus Delicti

{15} "In homicide cases the corpus delicti is established upon proof of the death of the person charged in the information or indictment, and that the death was caused by the criminal act or agency of another." *State v. Armstrong*, 61 N.M. 258, 259, 298 P.2d 941, 941 (1956). "The corpus delicti of a particular offense is established simply by proof that the crime was committed; the identity of the perpetrator is not material." *State v. Nance*, 77 N.M. 39, 44, 419 P.2d 242, 246 (1966). Contrary to these clearly articulated principles, Defendant mischaracterizes the corpus delicti rule as established by proof that the *defendant* committed the crime charged, erroneously relying on *Nance*.

{16} "It is well settled that the corpus delicti of the crime charged in the information cannot be established solely by the extra-judicial confession of the accused."

*Id.* at 44, 419 P.2d at 245–46. In other words, if there is no independent evidence that a victim is dead as the result of a criminal act of another, an out-of-court confession is insufficient to establish the corpus delicti of a homicide. Based on this rule, Defendant argues that nothing connected him to Barela's murder other than his admission to his sister and that, as a result, the State did not establish the corpus delicti in this case. Defendant misstates the appropriate inquiry for corpus delicti. Here, the State introduced independent evidence establishing Barela's death by the criminal actions of another. Thus, Defendant's admission to his sister is nonessential to the State's evidence concerning corpus delecti. "When there is, in addition to a confession, proof of the corpus delicti established by independent evidence, the defendant's voluntary confession will support a conviction." *Id.* at 44–45, 419 P.2d at 246.

{17} This Court, in *Nance*, concluded:

The *corpus delicti* in a prosecution for armed robbery, is in the instant case, sufficiently proven by the testimony of the complaining witness that he was the *victim of a robbery by some person* armed with a dangerous weapon. As the record discloses substantial proof of the corpus delicti in this instance, we find no error....

77 N.M. at 45, 419 P.2d at 246 (citations omitted) (emphasis added). Other cases relied upon by Defendant are either consistent with *Nance*, unsupportive of Defendant's argument, or inapplicable. *See State v. Jones*, 52 N.M. 118, 121, 192 P.2d 559, 561 (1948) ("We have examined the record and find that it had been established at the time of the introduction of the confessions that [the victim] was in fact dead, and that his death had been criminally caused by another. This sufficiently proved the corpus [delicti]."). In *State v. Chaves*, 27 N.M. 504, 506, 202 P. 694, 695 (1921), the Court observed:

It is trite to observe that in every criminal prosecution the first step must be to prove that the crime charged has been committed by some one. This proof may or may not primarily connect the defendant with the offense. In homicide cases it must be shown that the person whose death is al-

leged in the indictment is in fact dead, and that his [or her] death was criminally caused. If these facts are shown the corpus delicti is sufficiently proven.

{18} Defendant also relies on *State v. Vallo*, 81 N.M. 148, 464 P.2d 567 (Ct.App. 1970), mistakenly arguing that *Vallo* held that the corpus delicti required the identity of the accused. This Court of Appeals case involved a question of the identity of the victim, not the accused, and is thus inapplicable to the present case. *Id.* at 149, 464 P.2d at 568 ("In New Mexico, proof that the person killed is the same person as the one charged in the indictment to have been killed is part of the corpus delicti."). The Court of Appeals noted that its result was not inconsistent with this Court's holding in *Nance* that the identity of the perpetrator is not material to corpus delicti. *Id.* Defendant also relies on *State v. Romero*, 69 N.M. 187, 189–90, 365 P.2d 58, 60 (1961), which, similarly, stated, "In homicide cases, the corpus delicti is established when it is shown that the person whose death is alleged in the information is in fact dead and that the death was criminally caused."

{19} Defendant's confusion may result from *State v. McKenzie*, 47 N.M. 449, 144 P.2d 161 (1943), in which this Court quoted two out-of-state cases, one of which stated that "[t]he term 'corpus delicti' is made up of two elements: It must be shown, first, that a certain result has been produced, ... [and] second, that some one is criminally responsible therefor." *Id.* at 453, 144 P.2d at 164 (quoted authority and quotation marks omitted). The second quotation stated that "[t]here must be clear and unequivocal proof of the corpus delicti. Every criminal charge involves two things: First, that an offense has been committed; and, secondly, that the accused is the author, or one of the authors, of it." *Id.* (quoted authority and quotation marks omitted). This second quotation is inconsistent with the first and is merely dicta, as identity of the perpetrator was not at issue; instead, the issue concerned whether the property in question, a calf, had been stolen. More importantly, this Court, in *Nance*, referred to *McKenzie* but clarified the issue by directly addressing whether the

identity of the perpetrator is relevant to establish the corpus delicti. *Nance*, 77 N.M. at 44, 419 P.2d at 246.

{20} Thus, as this Court has held repeatedly, the corpus delicti of an offense is established by proof that the crime was committed, and the identity of the perpetrator is not material. *Nance*, 77 N.M. at 44, 419 P.2d at 246. We reject Defendant's application of this concept to the present case; his argument is without merit. There was no question regarding Ronnie Barela's identity. *See Chaves*, 27 N.M. at 506, 202 P. at 695 ("The body was found and fully identified."). Testimony of the medical examiner established that Barela's death was the result of the gunshot wounds he received. *See id.* (noting "the fact that death was criminally caused was likewise shown," and that "[t]here was a wound on the head sufficient to cause death"). There is no evidence that Barela committed suicide or died as the result of an accident. *See id.* ("There is nothing to indicate suicide or accident."). "The conclusion that he met death at the hands of some human being who is criminally responsible for it is irresistible." *Id.* Therefore, the State clearly established the corpus delicti in this case.

### III. Conclusion

{21} Sufficient evidence supports the jury's finding that Defendant possessed the deliberate intent required to sustain a conviction for first degree murder, and sufficient evidence supports Defendant's conviction. Defendant misunderstands the corpus delicti rule; the State established the corpus delicti. We affirm Defendant's conviction.

{22} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, FRANCHINI, and MAES, JJ., concur.