This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:  May 4, 2015**

**NO. 34,279**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ARTHUR ANAYA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Law Works, LLC
John A. McCall
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**BOSSON, Justice.**

**INTRODUCTION**

{1}     Defendant Arthur Anaya shot and killed Theresa Vigil and Austin Urban on January 23, 2012, then led officers on a five-day manhunt until he was captured. A jury convicted Defendant of two counts of first-degree murder. Because the district court imposed life sentences for each of the first-degree murders, we review his convictions on direct appeal pursuant to Rule 12-102(A)(1) NMRA and affirm.

**BACKGROUND**[1]

{2}     Theresa Vigil, her daughter Natalie Vigil, and Natalie's boyfriend Austin Urban all lived in Santa Fe in a trailer they rented from Defendant. Defendant lived in the trailer next door. In October 2011 Defendant and Theresa entered into an oral lease agreement for $300 per month to be paid on the twenty-third of each month. Defendant kept a notebook titled "rental agreement," in which he noted the dates and payments he received from Theresa. The ledger reflected full payment for October, $150 for November, and $140 for December. As of January 23, 2012, Theresa had not

---

[1]In Defendant's briefing to this Court, he provides two fact scenarios, one entitled "Condensed Version of Facts Pursuant to Defendant" and the other entitled "Facts Adduced on the Record." On appeal, we only consider facts that are offered through the record. *See* Rule 12-213(A)(3) NMRA.

paid any rent for January.

{3} The morning of January 23 Natalie woke up and went into the living room to watch television with her mother. Theresa received a phone call from Defendant. Natalie testified that she could not hear the specifics of the conversation. After the call, Defendant walked over to the trailer where Theresa met Defendant outside. According to Natalie, the conversation was tense and confrontational. After the confrontation, Theresa walked back into the trailer and started making breakfast. Defendant went back to his trailer.

{4} After arming himself with a gun, Defendant returned to Theresa's trailer and forcefully entered without permission. He approached Theresa and Natalie with the gun in hand, screaming and yelling about the rent. Theresa stood up to confront Defendant, who hit her in the face with his gun. Natalie intervened and Defendant hit Natalie as well. Upon hearing the commotion, Austin rushed into the living room and punched Defendant in the face. Defendant did not fall or stumble backward. Defendant then raised his gun and shot Austin once in the face, killing him instantly. Immediately, Theresa grabbed her phone to call her son for help. When she stood up, Defendant turned and shot her in the face. The call went to Theresa's son's voice mail and the subsequent events were recorded. After realizing Theresa was still alive,

Natalie begged Defendant to let her take her mother to the hospital. Defendant finally agreed. Natalie drove Theresa to the hospital, where she died later that night from her wounds. Javier Salcido, a friend of Austin Urban, was also present in the trailer during these events and testified at trial along with Natalie.

{5}    Natalie gave a statement to the police at the hospital and the police were immediately dispatched to Defendant's trailer, but Defendant had already fled. According to the State, "[a] massive manhunt was launched in search of [D]efendant with many requests for information disseminated to the public." Five days later, police were called to a trailer on Agua Fria Road where Defendant was hiding. After a standoff, police arrested Defendant. At trial, a jury convicted Defendant of two counts of first-degree murder, one count of aggravated burglary, and two counts of intimidating a witness.

**DISCUSSION**

{6}    Defendant raises five issues on appeal: (1) the trial court erred in denying Defendant's exercise of a peremptory excusal of the trial judge; (2) defense counsel's failure to timely excuse the trial judge constituted ineffective assistance of counsel; (3) there was insufficient evidence to sustain Defendant's conviction for aggravated burglary; (4) the trial court improperly denied Defendant's self-defense jury

3

instruction; and (5) cumulative error. Defendant does not challenge the sufficiency of the evidence to support his two murder convictions. We consider the issues raised in turn.

**Peremptory Excusal**

{7} Defendant argues that he was denied his right to peremptorily excuse the trial judge under NMSA 1978, Section 38-3-9 (1985), and Rule 5-106 NMRA. "A trial judge's ruling on a party's peremptory election to excuse presents a mixed question of law and fact. We review the judge's findings of historical fact using the deferential substantial evidence standard, while we review the application of the law to those facts de novo." *State v. Devine*, 2007-NMCA-097, ¶ 7, 142 N.M. 310, 164 P.3d 1009 (citations omitted). Rule 5-106(D) states the procedure for a peremptory excusal:

> The statutory right to excuse the judge before whom the case is pending must be exercised by a party filing a peremptory election to excuse with the clerk of the district court within ten (10) days after the later of: (1) arraignment or the filing of a waiver of arraignment; (2) service by the clerk of notice of assignment or reassignment of the case to a judge; (3) completion of publication of notice of reassignment in the case of a mass reassignment; or (4) filing of a notice of appeal from a lower court.

The rule also states that "[a] party may not excuse a judge after the party has requested that judge to perform any discretionary act." Rule 5-106(A).

{8} For clarity, we provide a brief timeline of the initial stages of Defendant's

criminal case. The State filed the criminal information on March 6, 2012, then amended that criminal information the next day. The case was assigned to Judge Stephen Pfeffer. Defendant was arraigned on March 9, 2012, where he pleaded not guilty to all charges. After the entry of the plea, his counsel raised the issue of competency.

{9} Defendant made two pro se motions to excuse the judge, first on April 16, 2012, and then on April 18, 2012, well beyond ten days after his March 9 arraignment. The district court did not act on these untimely motions. The district court found Defendant competent to stand trial on May 16, 2012. The preliminary hearing commenced on May 29, 2012, and Judge Pfeffer found probable cause as to all charges on June 21, 2012. Also on June 21, the State again amended the criminal information but did not add any new charges. Defendant was arraigned for a second time that same day.

{10} On June 28, 2012, within ten days of the second arraignment, defense counsel filed the third motion for peremptory excusal of Judge Pfeffer. The case was automatically transferred to First Judicial District Judge Michael Vigil that same day. On July 11, 2012, both Judge Pfeffer and Judge Vigil signed an order striking the peremptory excusal for two reasons: (1) it was untimely, and (2) by then, Judge

5

Pfeffer had already exercised his judicial discretion when he conducted the preliminary hearing and found probable cause to proceed. *See Devine*, 2007-NMCA-097, ¶ 18.

**{11}**    Rule 5-106(D)(1) states that a party has ten days after an arraignment or filing of a waiver of arraignment to peremptorily excuse the trial judge. In this case, Defendant was arraigned on March 9, 2012, and pleaded not guilty to all charges. The district court accepted this plea. The time for exercising Defendant's peremptory right to excuse began with his arraignment and extinguished ten days thereafter. Defendant's pro se motions were well outside this time frame as was the motion filed by defense counsel.

**{12}**    The State's amended criminal information and Defendant's second arraignment did not revive the peremptory excusal time line. New Mexico law recognizes the distinction between an amendment to an information and an amended information. *See Devine*, 2007-NMCA-097, ¶ 9 ("We note[] . . . the distinction between an 'amendment to an information,' which is 'a supplement to an otherwise effective and sufficient information,' and an 'amended information,' which 'constitutes the filing of a new instrument which supersedes its predecessor.'" (citation omitted)).

**{13}**    *Devine* provides an instructive example of this distinction. In *Devine*, the State

charged the defendant with voluntary manslaughter. *Id.* ¶ 2. This charge resulted in a mistrial. *Id.* The State then filed an amended criminal information to change the charge from voluntary manslaughter to second-degree murder. *Id.* ¶ 3. The State argued that the second trial was a continuation of the first trial and that the amendment to the criminal information simply conformed to the evidence. *Id.* ¶¶ 10, 12.

**{14}** Our Court of Appeals rejected that argument, citing the distinction between an amendment to an information and an amended information. The Court concluded that "the amended information in the present case, which added the charge of second-degree murder in place of the voluntary manslaughter charge, was a new instrument that superseded its predecessor." *Devine*, 2007-NMCA-097, ¶ 14. With that "new instrument" based upon an entirely new criminal charge, came a renewed opportunity to exercise a timely peremptory excusal of the trial judge. *Id.* ¶ 14.

**{15}** Here, by contrast, the State merely supplemented what it had already charged. The criminal information on which Defendant was initially arraigned (March 9, 2012) charged Defendant with two open counts of murder and tampering with evidence. The amended criminal information filed on June 21, 2012, changed the two open counts of murder to two counts of first-degree murder and dropped the tampering with evidence charge. This change constitutes a "supplement to an otherwise effective and

sufficient information," *Devine*, 2007-NMCA-097, ¶ 9 (internal quotation marks and citation omitted), that merely conforms to the anticipated evidence; it simply clarified that the original open count of murder was one of first-degree murder. We also note that when Defendant was first arraigned, the district court informed him that the possible sentence for the two open counts of murder was a life sentence as to each count, which under New Mexico law could only have meant first-degree murder. *See* NMSA §§ 30-2-1 (1994) and 31-18-14 (2009).

**{16}** Defendant's opportunity to peremptorily excuse the trial judge needed to be exercised within ten days of the initial arraignment, March 9, 2012. Failing to timely file such an excusal, Defendant cannot complain of any error on appeal.

**Ineffective Assistance of Counsel**

**{17}** Defendant argues in the alternative that if the motion to excuse was untimely, then he received ineffective assistance of counsel. As this Court has stated, an ineffective assistance of counsel claim is best handled through a habeas corpus proceeding where a proper evidentiary hearing can take place. *See State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the trial court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition

8

for writ of habeas corpus . . . ."); *see also State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 ("Defendant's proper avenue of relief [from ineffective assistance of counsel] is a post-conviction proceeding that can develop a proper record."). Defense counsel may have had sound reasons not to excuse Judge Pfeffer at the beginning of the district court proceedings. Only an evidentiary hearing on habeas can supply the necessary information. Nothing on this record suggests that defense counsel was ineffective for not pursuing a peremptory excusal.

**Aggravated Burglary**

{18}     Defendant maintains that his aggravated burglary conviction was not supported by sufficient evidence because he had the lawful right to enter the trailer. "The test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sosa*, 2000-NMSC-036, ¶ 6, 129 N.M. 767, 14 P.3d 32 (alteration in original) (internal quotation marks and citation omitted). "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id*. (internal quotation marks and citation omitted).

**{19}** In New Mexico, "[a]ggravated burglary consists of the *unauthorized entry* of any . . . dwelling or other structure . . . with intent to commit any felony or theft therein and the person . . . is armed with a deadly weapon." NMSA 1978, § 30-16-4(A) (1963) (emphasis added). Defendant advances two arguments as to why his entry was not "unauthorized."

**{20}** First, Defendant asserts the lack of any landlord/tenant relationship with Theresa Vigil. Defendant argues that he had "dominion and control over his father's trailer and possessed a right of entry to the premises" at any time. Neither the law nor the evidence supports such a theory.

**{21}** Historically, New Mexico required all rental agreements to be in writing. *See* NMSA 1978, § 47-8-3(O) (1997, amended 1999) ("'[R]ental agreement' means all *written* agreements between an owner and resident." (emphasis added)). However, in 1999 the Legislature amended this section to delete the word "written." *See* NMSA 1978, §47-8-3(P) (1999) ("'[R]ental agreement' means *all* agreements between an owner and resident." (emphasis added)). Accordingly, an enforceable rental agreement need not be in writing and can be made orally by the parties. Once an owner and resident enter into a rental agreement, the resident acquires certain possessory rights to the property. *See* NMSA 1978, § 47-8-26(A) (1999); *see also* NMSA 1978, § 47-8-

10

25 (1975); NMSA 1978, § 47-8-22 (1995). Therefore, by statute a landlord can no longer enter at will under most circumstances. *See* NMSA 1978, § 47-8-24 (1995).

{22}     The evidence at trial showed that Theresa and Defendant entered an oral rental agreement beginning in October 2011. Evidence of Defendant's conduct confirms this. Every time Defendant went to collect rent he carried a notebook titled "rental agreement" and noted the date and the payment. The evidence also showed that Defendant talked with a local bartender about his "tenants" and how to handle the rent payments. Moreover, in closing argument, defense counsel confirmed that Defendant was acting as a landlord.[2]

{23}     Based on the foregoing, we conclude there was sufficient evidence for the jury to find an "unauthorized entry" by virtue of a landlord/tenant relationship between Defendant and Theresa. Theresa and her family had a possessory interest in the trailer and Defendant did not have "dominion and control" over the trailer and could not interfere with Theresa's possessory rights without taking the proper steps provided by statute. *See* NMSA 1978, § 47-8-33 (1999).

{24}     Defendant's second argument is that even if Theresa initially had a possessory

---

[2]Defendant did file a motion to dismiss pursuant to *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329, on this issue before trial, but during closing argument defense counsel stated "[h]e came in to do what he thought he needed to do as a landlord, it would appear."

11

interest in the trailer, she was divested of that interest when she failed to pay the required rent in full, not only on the due date in question, but also for the months of November and December. Defendant argues that since October was the only month when Theresa paid the full amount of rent, thereafter Defendant had the right to enter the property.

**{25}** It is not clear from the record that Theresa actually was behind on the rent. It is undisputed that the rent was $300 a month. It is also undisputed that the ledger reflected full payment for October, $150 for November, and $140 for December. However, the reduction of the rent may have been due to the condition of the trailer. Natalie testified at trial that at times there was no heat or running water. We need not decide, however, whether Theresa properly withheld rent under these circumstances because Defendant's actions cannot be justified under any circumstance.

**{26}** Even if Theresa was behind on her rent, Defendant had to go through the proper channels and take the appropriate legal steps to regain exclusive possession of the trailer and evict his tenant. Pursuant to Section 47-8-33(D):

> If rent is unpaid when due and the resident fails to pay rent within three days *after written notice from the owner of nonpayment and his intention to terminate the rental agreement*, the owner may terminate the rental agreement and the resident shall immediately deliver possession of the dwelling unit; provided that tender of the full amount due, in the manner stated in the notice, prior to the expiration of the three-day notice shall

bar any action for nonpayment of rent.

(Emphasis added). This section specifically requires the landlord to give proper notice of the rent due and his intention to terminate the rental agreement if rent is not paid. After the three-day period, if the landlord has complied with these steps he can exercise his right to possession. If the resident denies the landlord possession of the premises, the landlord can then get a court order to regain possession. *See* § 47-8-24(D), (E).

{27}     New Mexico law does not permit a landlord to forcefully evict a tenant by unilateral action outside the legal system. Even if Theresa was behind on the rent, Defendant needed to give proper notice of the arrearage and his intention to terminate the rental agreement. Defendant chose not to follow statutory procedures, but instead forcefully entered the premises with a gun. Given these facts, Defendant cannot claim that his entry was authorized by law. We conclude that there was sufficient evidence for the jury to convict Defendant of an unauthorized entry for purposes of the aggravated burglary statute.

**Self-Defense**

{28}     Defendant next argues that the district court erroneously determined that the evidence was insufficient to instruct the jury on self-defense. "The propriety of jury

13

instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (alteration in original) (internal quotation marks and citation omitted). "For a defendant to be entitled to a self-defense instruction . . . there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170.

{29}     The elements of self-defense are that "the defendant was put in fear by an apparent danger of immediate death or great bodily harm, that the killing resulted from that fear, and that the defendant acted as a reasonable person would act under those circumstances." *State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted). *See* UJI 14-5183 NMRA. "A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on *every* element of self-defense." *Rudolfo*, 2008-NMSC-036, ¶ 17 (emphasis added).

14

{30} Defendant claims he was entitled to the self-defense instruction because he was confronted by "three hostile individuals" and he "was in fear for his safety." Defendant argues that he acted reasonably in shooting Austin and Theresa under the circumstances. More importantly, Defendant claims that it was up to the jury to decide the reasonableness of his apprehension and corresponding conduct. We are not persuaded.

{31} The record shows that after the initial argument with Theresa, Defendant went back to his trailer, armed himself, returned to Theresa's trailer, forcefully entered the trailer, and resumed arguing with Theresa about the rent. He assaulted both Theresa and her daughter Natalie. Only then did Austin intervene, unarmed, and punch Defendant with his fist.[3] Defendant than raised his gun and shot Austin in the face. Theresa stood up again, and Defendant turned the gun on her and shot her once in the head.

{32} For a self-defense instruction, Defendant needed to point to evidence that he was confronted by an apparent danger of immediate death or great bodily harm. In New Mexico:

[3]Defendant claims Austin's punch was "without provocation." We agree with the State's response: "[D]efendant apparently fails to appreciate the provocative nature of hitting one's girlfriend in the side with a gun and hitting that girlfriend's mother in the face with a gun."

15

> Self defense is not available to the defendant if he [started the fight] . . . unless . . . 1. [t]he defendant was using force which would not ordinarily create a substantial risk of death or great bodily harm; and 2. [the victim] responded with force which would ordinarily create a substantial risk of death or great bodily harm.

UJI 14-5191 NMRA (first alteration in original). This Court has stated that "a defendant who provokes an encounter, as a result of which he finds it necessary to use deadly force to defend himself, is guilty of an unlawful homicide and cannot avail himself of the claim that he was acting in self-defense." *State v. Chavez*, 1983-NMSC-037, ¶ 6, 99 N.M. 609, 661 P.2d 887.

{33} Here, Defendant killed Austin when Austin attempted to defend his girlfriend and her mother. Austin was unarmed, and though he punched Defendant, this act alone would not reasonably create a threat of great bodily harm or death to Defendant. Austin used non-lethal force attempting to defuse a lethal situation that Defendant created. Defendant then responded with lethal force without justification against both Austin and Theresa. Under these facts in the record, Defendant was not confronted by an apparent danger of death or great bodily harm. No reasonable juror could have found that Defendant acted in self-defense, and therefore, no self-defense instruction was warranted. "The purpose of recognizing self-defense as a complete justification to homicide is the *reasonable belief* in the necessity for the use of deadly force to

16

repel an attack in order to save oneself or another from death or great bodily harm." *Rudolfo*, 2008-NMSC-036, ¶20 (emphasis added) (internal quotation marks and citation omitted).

**Cumulative Error**

{34} Finally, Defendant raises the issue of cumulative error. Cumulative error occurs "when the cumulative impact of the errors [that] occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Baca*, 1995-NMSC-045, ¶ 39, 120 N.M. 383, 902 P.2d 65 (alteration in original) (internal quotation marks and citation omitted). Since Defendant has failed to show that any error occurred at his trial, there is no cumulative error.

**CONCLUSION**

{35} We affirm Defendant's convictions.

{36} **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**