This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40573**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOSHUA BRAZIEL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Albert J. Mitchell, Jr., District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant Joshua Braziel appeals his conviction for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994).[1] Defendant contends (1) there was insufficient evidence presented at trial to support his conviction; (2) he received

---

[1]Defendant was also convicted of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A) and (F) (2021), but that conviction is not at issue in this appeal. During a plea conference held prior to his jury trial, Defendant pleaded guilty to possessing methamphetamine.

ineffective assistance of counsel because his trial attorney failed to object to the testimony of two witnesses; and (3) alternatively, the district court's admission of these two witnesses' testimony constituted plain error. For the reasons that follow, we reject the assertions of error and affirm the rulings of the district court.

**DISCUSSION**

**I.      Sufficiency of the Evidence**

**{2}**      Defendant challenges the sufficiency of the evidence supporting his conviction, contending that the State failed to present evidence that Defendant had the requisite mens rea for second-degree murder. "In reviewing for sufficiency of the evidence, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Torres*, 2018-NMSC-013, ¶ 42, 413 P.3d 467 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Comitz*, 2019-NMSC-011, ¶ 16, 443 P.3d 1130 (internal quotation marks and citation omitted). Under the sufficiency of the evidence standard, evidence is viewed "in the light most favorable to the guilty verdict, . . . resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{3}**      In order to convict Defendant of second-degree murder, the State was required to prove, beyond a reasonable doubt, that (1) Defendant killed the victim; (2) Defendant knew that his acts created a strong probability of death or great bodily harm to the victim; and (3) this happened in New Mexico on or about the 4th day of September 2020. *See* UJI 14-210 NMRA. Defendant's challenge to the sufficiency of the evidence attacks only the second element, whether the State established that Defendant knew his acts created a strong probability of death or great bodily harm to the victim.

**{4}**      At trial, multiple witnesses testified about Defendant's actions and words leading up to Defendant shooting the victim. According to the parties' briefs, at the time of the shooting, the victim was staying at Defendant's home along with Kiersten Countryman, Defendant's then-girlfriend, and George Molinas, a friend of Defendant and the victim. The victim was asleep in Defendant's living room when Defendant took a gun from his bedroom and walked out to the living room. Defendant then held the gun to the victim's head and said, "Are you ready to die today?" before pulling the trigger of the gun, killing the victim.

**{5}**      Countryman testified that she and Defendant used methamphetamine every day for two years, including on the morning of the shooting. Countryman also testified that she and Defendant had to move out of their previous home a few weeks before the shooting because Defendant had fired a gun inside the home. Molinas testified that he

heard Defendant ask the victim, "Are you ready to die today?" prior to hearing a gun shot.

**{6}** Sergeant Gerardo Hernandez, New Mexico State Police Investigations Bureau, interviewed Defendant as part of his investigation of the shooting and corroborated Molinas' testimony. Sergeant Hernandez testified that Defendant initially denied saying anything to the victim immediately prior to shooting him, but later admitted saying, "Are you ready to die today?" prior to pulling the trigger of his gun. Sergeant Hernandez also testified that Defendant originally denied knowing his gun was loaded and a round was chambered, but later admitted to loading the gun and chambering a round earlier in the day.

**{7}** The State also admitted video of an interview between Defendant and New Mexico State Police that took place on the day of the shooting. During this interview, Defendant noted that he was familiar with the rules of gun safety. He stated that he knew one should never point a gun at anything they are not willing to shoot, as well as that one should always assume a gun is loaded.

**{8}** From the witnesses' testimony described above, the jury could infer that Defendant knew pointing a loaded gun at the victim and pulling the trigger created a strong probability of death or great bodily harm. *See State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)). Defendant's statement to the victim immediately prior to pulling the trigger and his knowledge of firearm safety strongly support this conclusion. While Defendant asks us to consider his own statements concerning his interaction with law enforcement following the shooting and his belief that the safety was on, the jury was free to disregard Defendant's testimony, and "[t]his court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314; *see also State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 ("[A]ppellate courts do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." (internal quotation marks and citation omitted)). Viewing all the evidence in the light most favorable to the guilty verdict, we conclude the evidence was sufficient to support Defendant's conviction on the charge of second-degree murder.

## II.	Ineffective Assistance of Counsel

**{9}** Defendant next argues that he received ineffective assistance of counsel because his trial attorney failed to object to the State's examination of the victim's adoptive sister and his biological mother. Defendant claims that this testimony, as well as the exhibits admitted through these two witnesses, was irrelevant and unfairly prejudicial.

**{10}** The State called the victim's sister as its first witness at trial. She testified that the victim was adopted by her father and mother when a family friend became pregnant. She described the victim when he was a child, noting that the victim was sweet but cried a lot. She explained that the victim lived with her, her husband, and their children for a time in Washington, but the victim moved back to New Mexico because he did not get along with her husband. She noted that the victim lived with their mother and father upon returning to New Mexico, but stayed with friends as well. The sister also described a time when she painted the victim's room pink in an effort to improve the victim's grades while he lived with her. Through her testimony, the State admitted three photographs of the victim. One photograph depicted the victim as a child and his sister noted that he was a happy child. Another photograph was of the victim with a "build-a-bear" he made while living with his sister's family. A third photograph depicted the victim as an adult wearing a cowboy hat, and his sister noted that the victim always wanted to be a cowboy.

**{11}** The victim's biological mother testified next. She described the victim as a "goofball" and "fun-loving." She explained that the victim lived with his adoptive parents until he was thirteen and then lived with her at various times. She noted that the victim earned his GED and worked at a gas station at the time of his death. She testified that she was aware the victim was living with Defendant and his girlfriend. The mother also testified that Defendant helped her move a fridge the morning of the shooting, but she did not have any interaction with the victim that day. Through this witness, the State admitted two photographs of the victim as an adult, one with the victim's hand to his mouth and another of him wearing a hat.

**{12}** Defendant argues that this "emotional" testimony and these "sympathetic" exhibits prejudiced the jury against him by "playing on their sympathies" for the victim. Consequently, Defendant contends that his trial counsel's failure to understand the importance of a jury's emotional response and how prejudicial such testimony might be at the beginning of trial amounted to ineffective assistance of counsel.

**{13}** "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted). "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245 (internal quotation marks and citation omitted). Regarding the first element, defense counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* ¶ 18 (internal quotation marks and citation omitted). As to the second element, to prevail, "[a] defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted). If either element is not established, a defendant will not prevail on an ineffective assistance of counsel claim. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (stating that the burden is on the defendant to establish each element of a claim of ineffective assistance of counsel); *see also State v. Trujillo*, 2002-

NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814 ("Assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." (internal quotation marks and citation omitted)). "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *State v. Hernandez*, 1993-NMSC-007, ¶ 27, 115 N.M. 6, 846 P.2d 312 (alteration, internal quotation marks, and citation omitted).

**{14}** Here, Defendant has not established prejudice resulting from his trial counsel's purported failure to object to the testimony of the victim's sister and biological mother and the admission of photographs of the victim. Defendant makes a bare assertion that but for his counsel's failure to object, there exists a reasonable probability he would have been convicted of involuntary manslaughter instead of second-degree murder. However, Defendant does not provide any reasoning to explain how or why he believes this evidence impacted the jury's decision-making as to the degree of the homicide charge. *See State v. Torres*, 2005-NMCA-070, ¶ 18, 137 N.M. 607, 113 P.3d 877 ("[A]n assertion of prejudice is not a showing of prejudice." (internal quotation marks and citation omitted)). Defendant's briefing discusses the different mens rea requirements for second-degree murder and involuntary manslaughter, but does not go further to explain why he believes the jury would have decided differently had Defendant's trial counsel objected to the testimony and exhibits at issue. We agree with the State that "[t]estimony about [the victim's] background and photographs of [the victim] before his death did not bear on [the] issue [of Defendant's mens rea]."

**{15}** Because Defendant has not established prejudice, he has failed to make a prima facie case of ineffective assistance of counsel. Notwithstanding this, Defendant may still pursue a habeas corpus proceeding on this issue and is free to develop the record with respect to his claims. *See State v. Quinones*, 2011-NMCA-018, ¶ 36, 149 N.M. 294, 248 P.3d 336 (clarifying that the defendant's failure to make a prima facie case of ineffective assistance of counsel on direct appeal "does not preclude [the d]efendant from pursuing these arguments in a collateral proceeding for habeas corpus relief, where [they] can develop a proper record").

## III.    Plain Error

**{16}** In the alternative, Defendant argues that the district court committed plain error when it allowed the victim's sister and biological mother to testify and when it admitted photographs of the victim. Defendant acknowledges that because he did not object to this testimony and these exhibits at trial, we review their admission for plain error. *See State v. Contreras*, 1995-NMSC-056, ¶ 23, 120 N.M. 486, 903 P.2d 228.

**{17}** Here, we note that Defendant has not developed a separate argument regarding plain error. He simply states that if we fail to find ineffective assistance of counsel, then we must find plain error as to the evidence at issue. However, just as Defendant has not

demonstrated prejudice to support his claim of ineffective assistance of counsel, Defendant has likewise not demonstrated prejudice under the plain error standard. *See State v. Summerall*, 1986-NMSC-080, ¶ 3, 105 N.M. 82, 728 P.2d 833 ("A defendant must show prejudice before a claim of plain error can stand."); *see also State v. Garcia*, 2019-NMCA-056, ¶ 10, 450 P.3d 418 ("To find plain error, we must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{18}** For the reasons stated, we affirm Defendant's conviction.

**{19}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**JACQUELINE R. MEDINA, Judge**